In re VON DER AHE.

(Circuit Court, W. D. Pennsylvania.   February 11, 1898.)

CONSTITUTIONAL LAW—DUE PROCESS—ARREST OF PRINCIPAL BY BAIL.
The arrest of a principal by his bail is based on the relationship the parties have established between themselves, and not on any process of the court; and hence the bail may make the arrest in another state than that where the bond is given, and transfer him thereto, without infringing his right under the federal constitution to due process of law.

Habeas Corpus.

J. S. & E. G. Ferguson, for relator.

C. A. O'Brien, Richard B. Scandrett, and A. O. Fording, for respondent.

BUFFINGTON, District Judge.   This is a writ of habeas corpus, sued out by Chris Von Der Ahe against Nicholas A. Bendell, commanding him to show by what right he holds the petitioner, and deprives him of his liberty.   The respondent justifies his detention of said petitioner under the facts here set forth, viz.:   One Baldwin had brought, in the court of common pleas No. 3, of Allegheny county, Pa., an action of trespass for malicious prosecution against Von Der Ahe. Under the laws and practice in Pennsylvania, the suit was begun by the issue of a capias, by virtue of which capias Von Der Ahe was arrested by the sheriff of said county.   To procure his release from custody and avoid imprisonment, Von Der Ahe had one Nimick become his bail on a capias bond, the condition of which was that he (Von Der Ahe) "shall satisfy the condemnation money and costs, or surrender himself into the custody of the sheriff of Allegheny county, or, in default thereof, that the said W. A. Nimick, the above-named bail, will do so for him."   Thereupon Von Der Ahe was released from custody. Upon trial of the case, a judgment was entered in Baldwin's favor, which was subsequently affirmed by the supreme court of Pennsylvania. 39 Atl. 7.

Under the Pennsylvania practice, the bail may, it is to be noted, discharge themselves by a surrender of their principal at any time prior to 14 days after the service of a scire facias or summons upon them, issued after the termination of the action (1 Troub. & H. Prac. § 319); and, upon the execution of the bond, "it shall be lawful for the bail therein, to have, from the officer by whom it is taken, a bail piece," etc. Act June 13, 1836, § 11 (Purd. Dig. p. 63).   Von Der Ahe having failed to pay the judgment or surrender himself to the sheriff, Nimick, the bail, on February 3, 1898, took out a bail piece, which was duly certified by the prothonotary and judge of the court wherein the action was brought.   By indorsement thereon, Nimick authorized Bendell, the respondent, to execute the same, and in his "behalf to take, seize, and surrender to the sheriff of Allegheny county, Pennsylvania, said Chris Von Der Ahe."   In pursuance of such authority, Bendell subsequently took Von Der Ahe into custody at St. Louis, in the state of Missouri, and by force brought him to Pittsburgh, for delivery to the sheriff.   Thereupon the petitioner, alleging that he was a citizen of

Missouri, "that no legal proceedings, if any such could have been had, were begun to warrant any such arrest in the state of Missouri," and that, contrary to article 5 of the amendments to the constitution of the United States, he was deprived of his liberty without due process of law, sued out this writ.

Of late years we have grown so accustomed to the proceedings by requisition that we have come to regard it as the only means by which a person can be arrested and removed from one state to another. An examination of the authorities, state and federal, shows, however, that, under certain circumstances, bail have the right to arrest their principals, wherever they find them, and remove them to the forum from which they have been released, and to which they have obligated themselves to surrender. By these authorities, to which we shall refer, it would seem settled that when one is arrested, and bail is given, such principal is regarded as delivered into the custody of such bail; that the bail has a right to arrest or take the principal into custody at any time or place in order to surrender him; that such arrest is not made by virtue of the process of a court, but is the exercise of a right arising from the relation between the parties; that a bail piece is not the authority for such arrest, but is simply evidence of the relationship between the parties. Such being the distinctions clearly drawn in the decisions, it will at once be seen that there is a fundamental difference between the right of arrest by bail and arrest under warrant where such right to arrest is based upon a court process, which, per se, can have no extrajurisdictional power or efficacy. The latter right depends upon the process of the court which issued it, and necessarily such process confers no power outside that jurisdiction. The former arrest, viz. of principal by bail, is based upon the relationship which the parties have established between themselves, and consequently, as between the parties, is not confined to any locality or jurisdiction.

In Nicolls v. Ingersoll, 7 Johns. 154, the peculiar relation created between principal and bail was clearly pointed out by the supreme court of New York. The plaintiff had given bail for his appearance in a civil action in Connecticut. The bail took out a bail piece, and, by an authorized agent, arrested the plaintiff in New York, and forcibly took him to Connecticut. Subsequently, the plaintiff brought suit in New York for assault and false imprisonment growing out of such taking. The arrest was justified, the court saying:

"The next inquiry is as to the right of bail to take the principal out of the state in which the recognizance was entered into. I do not perceive how any question of jurisdiction can arise here. The power of taking and surrendering is not exercised under any judicial process, but results from the nature of the undertaking by the bail. The bail piece is not a process, nor anything in the nature of it, but is merely a record or memorial of the delivery of the principal to his bail on security given. It cannot be questioned but that bail in the common pleas would have a right to go into any other county in the state to take his principal. This shows that the jurisdiction of the court in no way controls the authority of the bail; and as little can the jurisdiction of the state affect this right as between the bail and his principal. How far the government would have a right to consider its peace disturbed, or its jurisdiction violated, or whether relief would not be granted on habeas corpus, when a citizen of this state was about to be carried to a foreign country, are questions not now before the court. * * * The cases I have referred to are sufficient to

show that the law considers the principal as a prisoner, whose gaol liberties are enlarged or circumscribed at the will of his bail; and, according to this view of the subject, it would seem necessarily to follow that, as between the bail and his principal, the controlling power of the former over the latter may be exercised at all times and in all places; and this appears to me indispensable for the safety and security of bail."

This case was followed by the supreme court of Massachusetts in the case of Com. v. Brickett, 8 Pick. 138. There the principal was arrested in a civil action in Vermont, and gave bail. He was subsequently arrested in Massachusetts upon a bail piece, and thereupon sued out a writ of habeas corpus, alleging he could not be lawfully arrested in the latter state. Upon hearing, he was remanded to the custody of the bail for removal to Vermont.

The supreme court of Connecticut, in Parker v. Bidwell, 3 Conn. 84, cited approvingly the doctrine of Nicolls v. Ingersoll, supra, and justified the arrest upon bail piece and removal from Connecticut to New York of a principal who had given bail in an action in the latter state. In 1887 the cases of Nicolls v. Ingersoll and Com. v. Brickett were cited and approved by the supreme court of Vermont in Worthen v. Prescott, 60 Vt. 72, 11 Atl. 690. Speaking of the right of bail to arrest, the courts say:

"Their authority arises more from contract than from the law; and, as between the parties, neither the jurisdiction of the court nor of the state controls it; and so bail may take the principal in another jurisdiction or another state, on the ground that a valid contract made in one state is enforceable in another according to the law there. Nicolls v. Ingersoll, 7 Johns. 145; Com. v. Brickett, 8 Pick. 138. This shows that the authority need not be exercised by process, but that it inheres in the bail themselves; and that they may exercise it personally, or depute another to exercise it for them. See the case last cited and Pyewell v. Stow, 3 Taunt. 425; 1 Tidd, Prac. 218."

Nor is the doctrine of these cases without support in Pennsylvania. In Respublica v. Gaoler of Philadelphia, 2 Yeates, 263, the supreme court of that state recognized the right of bail in a suit in Virginia to arrest in Pennsylvania on a bail piece, saying:

"In the relation in which the several states composing the Union stand to each other, the bail in a suit entered in another state have a right to seize and take the principal in a sister state, provided it does not interfere with the interest of other persons who have arrested such principal."

In U. S. v. Bishop, 3 Yeates, 37, the same court recognized the right of bail in a Virginia suit to arrest Bishop, the principal, in Pennsylvania, and directed his delivery to the bail when certain pending court-martial proceedings terminated.

These cases were cited with approval and as declaratory of the law in Pennsylvania by Justice Baldwin, of the supreme court of the United States, sitting in this circuit, in Johnson v. Tompkins, 1 Baldw. 571, Fed. Cas. No. 7,416.

In Broome v. Hurst, 3 Yeates, 123, the supreme court of Pennsylvania refused to discharge a man who was arrested on a bail piece while returning from attendance on court as suitor, drawing a distinction between arrests by ministerial officers and the acts of bail in taking custody of their principal. The motion was discharged, and the arrest justified, because it was of the latter class.

85 F.—61

In Com. v. Riddle, 1 Serg. & R. 310, arrests on bail pieces from other states were referred to as a practice recognized in Pennsylvania.

In Holsey v. Trevillo, 6 Watts, 402, the principal was arrested in Pittsburgh by his bail in an action in New Jersey. While he was thus in custody of his bail, the sheriff of Allegheny county arrested him upon a capias. On habeas corpus sued out by the bail, the principal was released from the sheriff, and remanded to the charge of the arresting bail, the cases of Nicolls v. Ingersoll and Com. v. Brickett being cited with approval.

In Mason's Petition, 6 Leg. Gaz. 110, we have a comparatively late decision by the supreme court of Pennsylvania which is strong in point. Mason, who had given bail in an action in New York state, was taken into custody in Pennsylvania by his bail. He then sued out a writ of habeas corpus in the court of common pleas of Luzerne county, which court remanded him to the custody of the bail. This order was affirmed by the supreme court in an opinion delivered by Judge Agnew. As the opinion is not found in the State Reports, and is not generally accessible, we quote the same at some length. It will also be noted that it disposes of the question raised in the present case as to the effect of the act of July 12, 1842 (Purd. Dig. p. 67, pl. 52), abolishing imprisonment for debt, Judge Agnew says:

"It is well settled that bail from another state may arrest his principal in this state upon a bail piece, or depute another to do it, and take him out of the state, for the purpose of surrendering him in discharge of his recognizance. Holsey v. Trevillo, 6 Watts, 402. But it is objected that the act of 1842, abolishing imprisonment, has wrought a change in this respect, and operates as an exoneration, for which Kelly v. Henderson, 1 Barr, 495, is cited as authority. This is true as to bail at the time of the passage of the act, who then had their principal in custody, in a case where the nonimprisonment law cut up the right of imprisonment by the root. But certainly it is not true where the right of arrest remained under any of the exceptions in the act of 1842. Precisely so must we view an arrest by the bail under a bail piece, issued in an action in another state. The presumption is that the supreme court of New York acted rightly in requiring bail in the action there. We certainly ought not to inquire into the legality of his arrest there, and discharge the prisoner from the custody of his bail. Our order would be no justification to the bail in an action against him on his recognizance. The relation of the states to each other, requiring mutual co-amity, and the provision in the constitution of the United States that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, forbid an inquiry into the cause of action in New York,—one which we could not conduct with safety to the bail or credit to ourselves. We must take it for granted that the bail was rightly demanded, and the defendant committed to the custody of his bail, in conformity to the law of New York. This being so, the bail has the right to take his principal here, and remove him to New York, in order to comply with his undertaking."

It will thus be seen that the arrest of a principal by his bail in a state other than that where the bail was given has the sanction of numerous decisions of great weight, though not of controlling effect upon this court. But, apart from them, we do not think the question an open one so far as this court is concerned. Where the law has been laid down by the supreme court of the United States, the duty of this court to follow it is unquestioned. In our judgment, the law governing it was announced by that court in Taylor v. Taintor, 16 Wall. 371, and is decisive of the present case. The court there say:

"When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him, and deliver him up in their discharge; and, if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner. In 6 Mod. 231, it is said: 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' The rights of bail in civil and criminal cases are the same."

Irrespective of any views this court might entertain of the question, were it new, and not affected by former decisions, we are constrained, under stress of these decisions, and particularly in view of that of the supreme court of the United States, to hold that Van Der Ahe could lawfully be arrested in the state of Missouri by his bail, and removed to Pennsylvania. The petitioner is therefore remanded to the custody of Bendell, the respondent; and it is so ordered.