285 So.2d 923

David D. LIVINGSTON and Alabama
Bonding Company, a corporation,
jointly and individually

v.

Mrs. W. A. BROWDER.

Civ. 224.

Court of Civil Appeals of Alabama.

Nov. 21, 1973.

J. Doyle Fuller, Montgomery, for appellant.

Johnston, Johnston & Kendall, Mobile, for appellee.

HOLMES, Judge.

This is an appeal by the appellant, surety on an appearance bond, from a $2,500 judgment rendered against him for trespass. Appellant's dispositive assignment of error is that the court wrongfully charged the jury as to the rights of a bail bondsman to pursue and arrest his principal in the house of a third person.

The pertinent portion of the court's charge is as follows:

"Now as I said just now, as far as the law is concerned, Mr. Livingston, if he had a certified copy of that bond there that night and that is one of the points you have to determine here—if he had a certified copy of the bond with him, that gave him the right to pick up Mr. Gilmer, but I charge you that it did not give him the right to enter Mrs. Browder's home over her protest or without her invitation."

Appellant excepted to the charge by stating:

"MR. FULLER: We have one objection, based on the law as we view it and that is your instructions to the jury that certified copy did not give David Livingston the right to enter that house over Mrs. Browder's objection.

"THE COURT: That is where we differ on the law and I give you an exception to it. I know already that you don't think that is the law."

We further note that the trial court's oral charge, taken as a whole, is to the effect that under all circumstances a bail bondsman cannot enter the home of a third party to approach the principal without the third party's permission or consent.

The tendencies of the evidence reveal the following. Harvey Gilmer was arrested and jailed in Montgomery, Alabama, in June 1970, on charges of Driving While Intoxicated and No Drivers License. He obtained appearance bonds from Alabama Bonding Company, Inc., and was released pending his trial date of June 9, 1970. On the trial date, Gilmer failed to appear, thereby "jumping bond." The appellant Livingston, along with one of his employees, obtained certified copies of the bonds and drove to the residence of the appellee-plaintiff, the mother of Gilmer, in Baldwin County, Alabama, in search of Gilmer. They arrived in the evening on June 10, 1973. They noticed Gilmer's car out front and appellant could see Gilmer sitting in the house watching television. Appellant walked up on the porch and knocked on the door. He observed Gilmer getting up from his seat and leaving the living room. Appellee, Mrs. Browder, came to the door and opened it. After some question as to the automobile out front, appellant testified that he identified himself in the following manner:

"I told her I was David Livingston from Montgomery; that I was bondsman and I was there to arrest Harvey Gilmer and I had a certified copy of the bond."

Appellant asked if Gilmer was there. Appellee answered that he was. Appellant held up the alleged certified copy but appellee didn't get a chance to read it since, at this time, appellant saw Gilmer proceeding to the back of the house and appellant stepped through the door and apprehended Gilmer, who gave no resistance. There is conflicting testimony whether appellant said he had a search warrant or otherwise properly identified himself. Also, there is conflict whether appellee told appellant to wait at the door or come into the house.

■ Wide latitude has historically been given bail bondsmen to arrest their principal. This concept is bottomed on the premise that an original right arises from the relationship between a principal and his bail. This right has been likened to the rearrest by the sheriff of an escaping prisoner. The surety on a bail bond is liable in that the principal must appear at the prescribed time and place or the surety must pay the sum stated in the bond. Since the appearance of the principal is the surety's responsibility, the principal is technically in the custody of the surety. There is a strong public policy in preventing the principal from "jumping bond" and because of this, the surety is permitted a large discretion as to the steps necessary to effect the apprehension of the principal. Clearly, this large amount of authority allowed the surety is justified by the responsibility imposed upon him. See 8 Am.Jur. 2d Bail and Recognizance §§ 114–117; 8 C.J.S. Bail § 87; Restatement: Security, Chap. 9, § 204, and comments a, b, and c; Anno. 3 A.L.R. 180; Anno. 73 A.L.R. 1369; Smith v. Rosenbaum, D.C., 333 F. Supp. 35; Curtis v. Peerless Ins. Co., D.C., 299 F.Supp. 429; 21 Ala.L.Rev. 601 (1969); 66 Dick.L.Rev. 101 (1961). See also: Vol. III, Hawkins, Pleas of the Crown, Chap. 15, p. 185 (1795).

Pertinent Alabama statutes as to arrest of the principal by bail bondsmen are found in Ala.Code, Tit. 15, §§ 209, 210, and read as follows:

§ 209:

"Bail discharged by surrender of principal; may arrest, or authorize arrest, of principal.—Bail may, at any time before a conditional judgment is rendered against them, exonerate themselves by surrendering the defendant; and for that purpose they may arrest the defendant on a certified copy of the undertaking at any place in the state, or may authorize another person to arrest him by an indorsement in writing on such copy."

§ 210:

"Arrest by bail after conditional judgment.—After the rendition of conditional judgment against them, bail may arrest the defendant as provided in section 209

of this title; but such arrest and delivery of the defendant to the sheriff shall not exonerate the bail unless, in the judgment of the court, a good and sufficient excuse is given for the failure of the defendant to appear at the time the conditional judgment was rendered."

■ These statutes clearly provide that the bail or surety has the right to pursue the principal any place in the state and arrest him. This right of arrest is conditioned upon the surety's obtaining a certified copy of the bond, which serves as his legal process. Nicholson v. Kilpatrick, 188 Ala. 258, 66 So. 8; Gray v. Strickland, 163 Ala. 344, 50 So. 152; Shine v. State, 44 Ala.App. 171, 204 So.2d 817.

Two of the leading cases construing the powers of bail bondsmen are Taylor v. Taintor, 16 Wall. (83 U.S.) 366, 21 L.Ed. 287 (1873), and In re Von Der Ahe, 85 F. 959 (1898). The court in the *Von Der Ahe* case, as in *Taylor*, stated that the custody of the bail over the principal was for all purposes a continuance of the original imprisonment. Importantly, the court analogized the power of a bail bondsman to arrest his principal to the power of a sheriff to rearrest an escaping prisoner. Note, however, that the right of a surety to capture his principal is not a matter of criminal procedure, but arises from private rights established by the bail contract between the principal and his surety.

■ The question now presents itself as to what procedure is necessary in the bail bondsman's arrest of his principal. Generally, an officer having the right to arrest a person for a misdemeanor may use such force as is necessary to effect his purpose, but he may not use excessive force. The privilege to arrest for a criminal offense generally includes the right to enter land in the possession of another for the purpose of making the arrest, if the person sought to be arrested is there. It also appears that if an officer or private person has reasonable and just cause to believe that the person sought is on the premises, he may enter for the purpose of arresting one who is accused of a felony, or is guilty of a breach of the peace or a misdemeanor committed in his presence. See: 5 Am.Jur.2d Arrest §§ 82, 86.

Alabama Code, Tit. 15, § 153, provides:

"Arrest by officer under warrant; when and how made.—An officer may execute a warrant of arrest on any day and at any time; he must, in doing so, inform the defendant of his authority, and, if required, must show the warrant; and if he is refused admittance, after notice of his authority and purpose, he may break an outer or inner door or window of a dwelling house, in order to make the arrest."

■ Importantly, in most circumstances, a person must make known his purpose and demand admittance before breaking into and entering the house of another to make an arrest. 5 Am.Jur.2d Arrest § 93. Mr. Justice Bouldin, in Gray v. Williams, 230 Ala. 14, 18, 160 So. 715, 718, spoke to this point when he stated:

"In entering the dwelling of a third person, especially at night, the officer is under duty to apprise the head of the family of his mission and authority. No particular words are necessary, but, coming in the name of the law, he should make known such fact."

In the instant case, there is testimony that Livingston identified himself and made known his purpose and authority to appellee. If believed by the trier of fact, this appears to be adequate and necessary for identification purposes. Gray v. Williams, supra; Spooney v. State, 217 Ala. 219, 115 So. 308.

Under Alabama law, an officer may use reasonable force to arrest but is without privilege to use more force than is necessary to accomplish the arrest. Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794.

As to the reasonableness of the arrest and the actions by Livingston, the bail

bondsman, to effectuate it, we note the following. The evidence tended to show that the appellant saw and recognized Gilmer's car outside appellee's home. He also saw Gilmer sitting inside when he walked up to the porch to knock on the door. After he knocked on the door, he saw Gilmer leave the room, and appellee came to the door and opened it. While the door was open, he saw Gilmer going down the back hallway and stepped through the door and apprehended him. These actions would present a question for the jury as to the reasonableness of the actions as there was no violence whatsoever. Gilmer peacefully submitted to the arrest.

■ Able counsel for appellee states in brief that it would be inconceivable for the law to allow bail bondsmen to enter and search the homes of private citizens at will without any legal or judicial supervision. He may well be correct, but a bondsman does have the authority to arrest, as in this instance, when he sees his principal in the dwelling; when he properly identifies himself; and when he acts in a reasonable manner to enter the dwelling to effectuate his arrest. See: Beard v. Stephens, 5 Cir., 372 F.2d 685. Under the circumstances referred to above, he would not be required to have the permission or consent of the owner of the dwelling, as the trial judge charged.

■ In view of the above, the trial court's oral charge to the jury, to the effect that a bail bondsman must have the consent or permission of a third party or he will be liable for trespass, was, under the evidence of this case, an incorrect statement of the law. Furthermore, in this regard, taken as a whole, the charge was misleading to the jury. We also find that appellant's exception to the charge was sufficient to direct the attention of the court to the specific language to which appellant objected.

We particularly note that there is a factual question involved in the case whether appellant-Livingston misrepresented him-self or his status. If appellant misrepresented his authority, or did not have authority, he might be found guilty of a trespass. See United States v. Trunko, 189 F. Supp. 559 (D.C.Ark.1960).

In view of the above, it is not necessary to discuss appellant's other assignments of error and the cause is reversed and remanded.

Reversed and remanded.

WRIGHT, P. J., and BRADLEY, J., concur.