John POTEETE, Petitioner,

v.

J. R. OLIVE d/b/a Ace Bonding Company, Respondent.

Supreme Court of Tennessee.

Sept. 2, 1975.

W. A. Moody, Carrol D. Kilgore, Branstetter, Moody & Kilgore, Nashville, for petitioner.

Charles F. Frazier, Frazier & Faimon, Nashville, for respondent.

## OPINION

BROCK, Justice.

This is an action for damages against the plaintiff's bail and the bail's agents for false imprisonment and assault and battery. The issues to be resolved are (1) whether the failure of a bondsman's agents to carry a certified copy of the undertaking endorsed by the bondsman as specified in T.C.A. § 40–1227 and to exhibit it to the principal when arresting him renders the arrest unlawful, and (2) whether the bondsman has authority to arrest the principal after a conditional forfeiture of the bond has been entered by the court.

The record reveals that in September of 1972 the plaintiff, John Poteete, was in jail awaiting trial on two charges of passing forged papers. He was released on Sep- tember 6, 1972, on a bail bond signed by the defendant, J. R. Olive, doing business as Ace Bonding Company.

Poteete was scheduled for arraignment on October 20, 1972. However, he phoned Olive long distance that morning to inform him he would be unable to appear because his truck had broken down. The court ordered a conditional forfeiture and issued a capias directed to the Sheriff. On October 25 Olive brought Poteete to court but the arraignment was continued because Poteete's lawyer was unavailable. On October 27 the court set the forfeiture aside. The arraignment was rescheduled for October 30; the parties dispute whether Poteete was so notified. Poteete failed to appear on that date and a forfeiture was taken and a second capias issued to the Sheriff.

Throughout November Olive searched unsuccessfully for Poteete, who by his own admission was frequently out of town. Olive hired Mr. Hagewood, who in turn hired Mr. Sweatt, to assist in finding Poteete and returning him to jail. Hagewood and Sweatt are also defendants in this case; they are self-employed and serve as agents to apprehend fugitives for numerous bonding companies. Olive testified that he gave Hagewood the capias directed to the Sheriff but did not give him an endorsed certified copy of the bond.

Hagewood and Sweatt located Poteete in Nashville in late November of 1972. He was repairing his car at a service station in the company of his wife and an acquaintance, Mr. Vick, when they approached him. From this point the plaintiff's and defendants' stories diverge sharply.

According to Poteete, Hagewood and Sweatt did not identify themselves, inform him of their authority, nor show him any documents. Poteete stated that he had seen their faces before but did not know who they were. They told him that Olive wanted to speak to him, and he talked with Olive over the telephone in the gas station. He admits that on the telephone he "kidded" Olive by denying he was John Poteete

and claiming instead to be his brother, Donnie. Olive, after speaking to Poteete for several minutes, asked him to put Hagewood on the telephone. While Hagewood was on the telephone Poteete testified he walked to get the tools he had left lying beside the station. Suddenly Hagewood started screaming "Shoot him!" and Sweatt drew a gun. According to Poteete, Hagewood then shoved him against a wall to handcuff him. He fell on his face and was hit or kicked by his captors. Sweatt and Hagewood told him they were carrying him in because they had a capias for him. They threw him in their car and delivered him to jail. Poteete's story was corroborated by his wife and by a friend, Mr. Vick. They added that Hagewood ordered them to "get the hell out of there" and threatened to arrest Mrs. Poteete if she didn't leave.

The version of Hagewood and Sweatt differs considerably from that of the plaintiff. According to Hagewood, when Sweatt and he approached Poteete at the service station they orally identified themselves and told him that Olive wanted to see him and that he was under arrest by his bail. Hagewood stated he had in his possession the capias and a copy of the bond but he admitted that he never took these documents out of the folder he was carrying nor showed them to Poteete. Poteete, however, denied his identity and claimed to be his brother, Donnie Poteete. Hagewood then phoned Olive from the station for instructions. Olive asked to speak to Poteete and when Hagewood returned to the phone Olive told him, "That's the man." Hagewood stated that while he was on the phone Poteete tried to run away, and that he dropped the phone and hollered to Sweatt to stop him. Sweatt pulled his gun, and Hagewood ran after Poteete. He caught him and made him put his hands against the wall so he could search him. Poteete allegedly turned on Hagewood and the two lost their balance, tumbling to the ground with Hagewood on top. Hagewood said that Poteete was resisting arrest and that he fell bodily on him to restrain him. He

then handcuffed Poteete, Sweatt picked him up, and they walked him to the car. Both Sweatt and Hagewood denied striking the plaintiff. Hagewood admitted at trial that he ordered Mrs. Poteete and Mr. Vick to leave.

Poteete spent that night in jail. The next morning he was taken to the hospital where a fracture of the right patella was diagnosed. He was put in a cast up to the hip and subsequently wore a series of casts for two and one-half months. He required crutches for four months after the last cast's removal.

In December, 1972, Poteete commenced an action against Olive, Sweatt, and Hagewood for false imprisonment and assault and battery. The trial judge charged the jury that a bondsman has the legal right to make an arrest only prior to a specified court appearance date and has no power of arrest after the criminal court has declared a forfeiture; he did not differentiate between a conditional and a final judgment of forfeiture, and he also declined to give instructions tendered by the respondent to the effect that the bail has authority to arrest the principal after a conditional judgment of forfeiture had been entered. The jury returned a verdict against the defendants for $3,000 compensatory damages and for $5,000 punitive damages against Olive and $2,500 punitive damages against both Sweatt and Hagewood.

Olive was the only defendant to appeal to the Court of Appeals. He challenged the trial judge's instructions to the jury regarding a bondsman's right of arrest. The Court of Appeals reversed the judgment of the trial court holding that the trial judge erred in charging the jury that the bail has no authority to arrest the principal after a conditional judgment of forfeiture had been entered and in failing to charge, as requested by respondent, that the bail has such authority. We agree with the conclusion of the Court of Appeals that the bail is vested with authority to arrest the principal after a conditional judgment

of forfeiture is rendered. *Devine v. State*, 37 Tenn. (5 Sneed) 623 (1858). Even after final forfeiture the bail may be exonerated if he surrenders the accused *prior to payment.* T.C.A. § 40–1303. See also *State v. Frankgos*, 114 Tenn. 76, 85 S.W. 79 (1904). Following payment the bail's right to surrender the accused lapses and with it his power of arrest. See *Commonwealth v. Johnson*, 3 Cush. (57 Mass.) 454 (1849). We, therefore, affirm the judgment of the Court of Appeals reversing the judgment of the trial court and remanding for a new trial.

We proceed now to consider another issue. Poteete petitioned the Court of Appeals for a rehearing contending that his arrest was illegal even if the bail did have authority to arrest after entry of a conditional forfeiture because the bondsman failed to comply with T.C.A. § 40–1227. His argument was based upon the failure of Olive to give his agents a certified copy of the bond endorsed to them and on the failure of the agents to exhibit the bond to him at the time of arrest. The Court overruled Poteete's petition to rehear. Poteete has petitioned this Court for certiorari on the single question raised in his petition for a rehearing. We have decided to determine this issue because of its continuing importance to the administration of justice. It is, furthermore, tangential to the issue originally raised about the time period over which the bail's right to arrest extends, both issues dealing with the limitations on his power of arrest.

Tennessee Code Annotated provides:

"§ 40–1225. At any time before the forfeiture of their undertaking, the bail may surrender the defendant in their exoneration, or he may surrender himself to the officer.

"§ 40–1227. For this purpose, they may arrest the defendant on a certified copy of the undertaking, at any place in this state, or may, by a written authority indorsed on such copy, authorize another person to make the arrest."

Olive stated at trial that he gave Hagewood the capias but never gave him a certified copy of the undertaking, nor endorsed such a copy. Hagewood testified, however, that at the time of arrest he was carrying the capias and a copy of the bond in a folder. If he was carrying such a bond, it was obviously not certified nor endorsed by the bail. The evidence is contradictory as to whether Hagewood and Sweatt identified themselves and their mission to Poteete, but all of the parties agree that neither the bond nor the capias was displayed at the time of arrest.

Two issues are raised by these facts. First, did the failure of the bail to give his agents a certified copy of the bond with their authority to arrest endorsed thereon render the arrest illegal? And secondly, did the failure of the agents to exhibit such a copy to Poteete make the arrest illegal? After careful consideration of T.C.A. § 40–1227 we have concluded that both of these questions must be answered in the affirmative.

At common law the bail had very broad arrest powers. In the leading case on the subject, *Taylor v. Taintor*, 16 Wall (83 U.S.) 366, 21 L.Ed. 287 (1873) the United States Supreme Court stated:

"When bail is given, the principle [sic] is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest, by the sheriff, of an escaping prisoner." Id. at 290.

However, we find it unnecessary to consider whether the arrest in this case

would have been legal under the common law. We hold that in Tennessee the bail's power of arrest is prescribed exclusively by statute.

In the early statutes of Tennessee the rights and privileges which the bail possessed "by law" to take and surrender his principal were expressly preserved. See *Tennessee Acts of 1827*, Ch. 18, § 4. T.C.A. § 40–1227 first appeared as § 5173 in the *Code of Tennessee, 1858* (Meigs and Cooper). That section has not been altered from 1858 to the present. No statute protecting the bail's common law right of arrest was included in the *Code of Tennessee, 1858*. In our view, the legislators by specifying the mode of arrest in § 5173 and omitting the section maintaining the bail's common law powers of arrest expressed a clear intention that § 5173 be exclusive.

The *Code of Alabama, 1958*, Title 15, § 209 is virtually identical to T.C.A. § 40–1227. The Supreme Court of Alabama analyzed the relationship of that statute to the common law in *Gray v. Strickland*, 163 Ala. 344, 50 So. 152 (1909).

"Under the common law the sureties upon a defendant's bail had the unquestioned right to arrest him at pleasure and surrender him into the hands of the law, and this could be done without the issuance of process. [Citations omitted.] Section 6351, Code 1907, provides for the discharge of the sureties by a surrender of the principal, and also provides for the arrest of the defendant upon a certified copy of the undertaking. Therefore, under the statute, the sureties have the right to procure their discharge by surrendering the principal at any time before a default, just as they had under the common law; the only change being that the arrest must be made upon a certified copy of the bond. The statute does not give any additional rights or powers, but really qualifies the common law right of arrest, and this method, as prescribed by the statute, must be exclusive. It gives no additional right to arrest, and cannot be said to be in aid of or cumulative to the common law in this particular, and, to give it any meaning or operation whatever, it must be construed as confining the right of arrest by the sureties in the manner therein required. To hold otherwise would render the statute meaningless as to the requirement in making arrests, and in effect stultify the lawmakers." Id. at 153.

See also *Nicholson v. Killpatrick*, 188 Ala. 258, 66 So. 8 (1914).

In *Cooke v. Harper*, 78 Ind.App. 267, 135 N.E. 349 (1922), the Appellate Court of Indiana stated:

"It is well settled that, where the manner in which the accused may be surrendered and the surety on a recognizance exonerated is fixed by statute, the mode of arrest and surrender provided by statute is not cumulative but is exclusive of the common-law remedy; and, if the surety desires to surrender his principal, there should be substantial compliance with the statute." Id. at 350.

We are in complete agreement with the Indiana court.

■ Such being the case, it is clear that Olive was required by T.C.A. § 40–1227 to give his agents a certified copy of the bond properly endorsed to them in order to authorize the arrest. The endorsed bond in the hands of the bail's agents is a substitute for a warrant. 1 Clarence Alexander, *The Law of Arrest in Criminal and Other Proceedings*, p. 704, § 196 (1949). It serves as their legal process. *Livingston v. Browder*, 51 Ala.App. 366, 285 So.2d 923 (1973).

■ It is also implicit in T.C.A. § 40–1227 that the bail's agents must exhibit the bond to the principal when arresting him. This is the obvious purpose in requiring written proof of authority.

In *Shine v. State*, 44 Ala.App. 171, 204 So.2d 817 (1967), the Alabama Court of Appeals confronted this question.

"To make any kind of arrest, valid authorization and authority is requisite. Though Dean contends that a certified

copy of appellant's bond was in his possession on the date in question, there is no positive evidence that it was ever shown to appellant or produced in his presence. Therefore, it is questionable that appellant had absolute knowledge by what authority this attempt to take him from his home was legally based. It is a vital part of an arrest for the accused to have notice of the authority under which he is being arrested as well as to know by whom he is being arrested. Even a police officer making a valid arrest must declare his intention and authority, unless, of course, his life is in such jeopardy as to preclude this notice. In this case there was certainly nothing found in the record which would lead this band of individuals performing then and there as a "posse", to believe that appellant would come out shooting, or that their lives were in jeopardy at the time the certified copy of the bond should have been produced as their authority." Id. at 822.

In our opinion this interpretation of a similar statute by the Alabama courts as requiring exhibition of the bond is strengthened in Tennessee by the legislative intent expressed in T.C.A. § 40–806. According to that section when a police officer arrests a person he must "inform him of his authority and the cause of arrest, and exhibit his warrant if he has one, except when he (the person arrested) is in the actual commission of the offense, or is pursued immediately after an escape." The reason behind this section is to provide the person arrested with notice of the officer's authority and purpose, and to give him the opportunity to submit peacefully. The same rule should be applied to a bail and his agents when making an arrest. Indeed, it is even more important that a bail and his agents be required to exhibit written proof of their authority because a police officer's uniform will generally provide the person he is arresting with sufficient notice of his official character. *Galvin v. State*, 46 Tenn. 283.

Accordingly, we affirm the judgment of the Court of Appeals remanding this cause to the trial court for a new trial consistent with this opinion. All costs in this Court are taxed against the petitioner.

FONES, C. J., and COOPER, HENRY and HARBISON, JJ., concur.