This case involves a question of the constitutionality of four articles of Act 93-677,[1] Ala. Acts 1993, the Bail Bond Reform Act of 1993 (hereinafter "the Act" or "the Alabama Act"), which first became effective on July 1, 1993. On July 8, 1993, the Jefferson Circuit Court declared that articles V, VI, VII, and VIII of the Act were "unconstitutional, null and void." On July 16, the State appealed, asking this Court to determine the constitutionality of articles V, VI, VII, and VIII. Subsequently, the Act was amended effective August 31, 1993, by Act 93-901, Ala. Acts 1993, to delay its effective date to July 1, 1994.
 I. Facts
On July 5, 1993, Robert Blake was arrested and charged with the offense of theft by fraudulent leasing. Ala. Code 1975, § 13A-8-140. Blake had rented, but failed to return, a videotape of the movie "Born on the Fourth of July." Blake's bail was set at $300, as provided by the Act. Blake was employed at the time of his arrest, but had only $24 in savings and owned no real estate. He stated that he telephoned a bonding company and was informed that he would need to have someone with a job sign for him even if he could raise the $50 required to get the company to issue a bond. According to Blake, his mother had the $50, but she was retired and could not sign for him.
On July 6, 1993, Blake filed an affidavit of indigency and was given appointed counsel. *Page 962 
Blake's counsel immediately filed in the Jefferson Circuit Court a "Petition for a Writ of Habeas Corpus and a Motion to Declare Act No. 93-677 Unconstitutional." The court held a hearing on the petition the same day, and on July 8, it entered a written order declaring articles V, VI, VII, and VIII of the Act unconstitutional. It should be noted that section 66 of article XI is a severability clause.
The circuit court's order held that article V ("Arrest by Principal's Sureties, Procedure of Arrest, Bondsman's Process"), article VI ("Forfeiture — Proceedings Thereon"), and article VIII ("Qualification for Property Bail") were unconstitutional because they were "too vague, unreasonable and overbroad." It found article VII ("Qualification of Bail — Judicial Public Bail") unconstitutional "because the indigent defendant in the case at bar was denied equal protection and due process under federal and state constitutional provisions, and [because] article VII is overbroad and vague." The circuit court further ordered that the procedures in existence before the implementation of the Act be put back into effect.
 II. Article V[2]
As noted above, article V of the Act is entitled "Arrest by Principal's Sureties, Procedure of Arrest, Bondsman's Process." It sets forth the procedures by which the surety on a defendant's bail bond can obtain from the clerk of the court with jurisdiction over the defendant a document that will allow the surety to arrest the defendant in order to guaranty the defendant's appearance in court. This new document is termed a "bondsman's process." Ruling that this article was unconstitutional, the circuit court concluded: "Article V attempts to provide for an arrest warrant to be issued to [someone not a] police officer who does not have even minimum standards of law enforcement [training]. The procedures attempted to be established for this bondsman's process [are] too vague to meet constitutional requirements."
A statute that does not concern First Amendment freedoms or the definition of criminal conduct may be declared unconstitutionally vague "only if a person of ordinary intelligence, exercising common sense, can derive no rule or standard at all from the statute's language." Friday v. EthanolCorp., 539 So.2d 208, 213 (Ala. 1988). Having reviewed the text of article V of the Act, this Court finds it clear that a person of average intelligence, exercising common sense, can derive a rule or standard for the procedures to be followed for a surety on a defendant's bail bond to obtain the bondsman's process needed to arrest the defendant. Accordingly, the article is not unconstitutionally vague.
The circuit court also ruled that article V is unconstitutionally "unreasonable and overbroad." This Court has previously stated that "[s]tatutes and regulations are void for overbreadth if their object is achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Friday, 539 So.2d at 215 (quoting Ross NeelyExpress, Inc. v. Alabama Dep't of Environmental Management,437 So.2d 82, 85 (Ala. 1983)). Apparently, the circuit court ruled that article V was unconstitutional because it provides the equivalent of an arrest warrant to bail bond sureties without requiring that the person who is to arrest the defendant have minimum training equivalent to that required for law enforcement officers, creating a possibility that the safety of Alabama citizens, in addition to the safety of the defendant, could be endangered by the attempted arrest.
Before the Act became effective, Ala. Code 1975, §§ 15-13-62
and -63 authorized a surety to arrest a defendant "on a certified copy of the undertaking" of bond. Section 15-13-62. Such authorization for a defendant's arrest by his bail bond surety continues in the Act, but in sections 18 and 19, in article IV, not in article V, as the circuit court's order implies. Article V of the Act only replaces the requirement that a surety have a certified copy of the undertaking of the bond in his possession in order to arrest the defendant, with the requirement that the surety possess a new document called a "bondsman's process," which clearly sets *Page 963 
forth the surety's right to arrest the defendant. That right of arrest, which is a contractual right under the bond, seeLivingston v. Browder, 51 Ala. App. 366, 285 So.2d 923
(Ala.Civ.App. 1973), was not clearly expressed on the face of the copy of the undertaking of bond previously used. Thus, the basis on which the circuit court declared Article V unconstitutional, that it provides for the arrest of a defendant by a surety without law enforcement training, is not applicable to article V.
Further, it has been well established under both Alabama's statutory law and its case law for more than 100 years that a surety has the power to arrest a defendant to ensure the defendant's appearance at trial. See Bearden v. State, 89 Ala. 21,7 So. 755 (1890) (tracing the statutory history of the right of a surety to arrest and surrender the defendant, back to at least the Code of 1852). The Court of Civil Appeals has previously explained:
 "Wide latitude has historically been given bail bondsmen to arrest their principal. This concept is bottomed on the premise that an original right arises from the relationship between a principal and his bail. . . . There is a strong public policy in preventing the principal from 'jumping bond' and because of this, the surety is permitted a large discretion as to the steps necessary to effect the apprehension of the principal. Clearly, this large amount of authority allowed the surety is justified by the responsibility imposed upon him."
Livingston, 51 Ala. App. at 368, 285 So.2d at 925. However, the discretion provided to the bail bondsman in performing the arrest has its limits, which are described in our case law. SeeO.K. Bonding Co. v. Milton, 579 So.2d 602 (Ala. 1991); Watkinsv. City of Mobile, 549 So.2d 575 (Ala.Crim.App. 1989);Livingston, supra; and Shine v. State, 44 Ala. App. 171,204 So.2d 817 (1967). Accordingly, we conclude that neither the provisions setting out the procedure for obtaining a bondsman's process found in article V, nor the provisions allowing for the surety's right to arrest the defendant found in article IV are unconstitutionally vague nor overbroad.
 III. Article VI[3]
The circuit court ruled that article VI of the Act, entitled "Forfeiture — Proceedings Thereon," was unconstitutional because "[t]he provisions of this Article attempt to provide a mechanism for bond forfeiture, but the procedures are too vague and overbroad to meet constitutional requirements." This article sets forth the procedures by which either cash bail or a surety's bond shall be forfeited if the defendant fails to appear in court. Under article VI, if a cash bail is forfeited and that forfeiture is not discharged, the court is authorized to summarily render a final judgment in the bond amount and the amount forfeited becomes money of the state or municipality.
However, if a defendant released on a surety's bond fails to appear as directed, the forfeiture procedure is more involved. First, the court must order a conditional forfeiture and a show cause order against the defendant and the surety or sureties. The defendant and the surety or sureties must receive notice of the conditional forfeiture order within 90 days or else the surety's liability is discharged. If such notice is timely received by the surety and the surety files an adequate and timely written response explaining why the bond should not be forfeited, the court is to set aside the conditional forfeiture. Otherwise, a hearing is set to determine if the bond should be forfeited, and if no response is filed the court is to enter a final forfeiture order. Finally, if because of a final forfeiture the surety has paid a sum into the court, but then the surety locates the defendant, within six months of the final forfeiture order, if the "administration of justice has not been thwarted" the judge may remit the sum forfeited and order the comptroller to issue a refund to the surety.
Although there was testimony presented at the hearing on Blake's petition that certain court personnel who must apply the requirements of article VI find it confusing, that testimony was given less than a week after the Act became effective. Under the standard for unconstitutional vagueness pronounced *Page 964 
in Friday, supra, and discussed above, we conclude that a person of average intelligence, using common sense, can derive a rule or standard for the procedures to be followed by the court in forfeiting cash bail or a surety's bond. Further, the concepts of conditional forfeiture, setting aside of the conditional forfeiture, and final judgment of forfeiture of bail, cash or otherwise, are not new to Alabama law. The procedures outlined in article VI appear to be based on Ala. Code 1975, §§ 15-13-80 to -82, and Rule 7.6(d), A.R.Crim.P., with some modification. Even the concept of a surety's exonerating a final judgment of forfeiture by later locating and turning over the defendant is not new to Alabama law. See Bearden, 89 Ala. at 23, 7 So. at 756.
Nor do we find article VI unconstitutionally overbroad. It does not "sweep unnecessarily broadly and thereby invade the area of protected freedoms." See Friday, 539 So.2d at 215. Further, although Blake implies that article VI was written specifically to benefit sureties, "it is not a function of this Court to determine the wisdom of specific legislation."Beddingfield v. Central Bank of Alabama, N.A., 440 So.2d 1051,1052 (Ala. 1983). Thus, we conclude that article VI of the Act has not been shown to be either unconstitutionally vague or overbroad.
 IV. Article VIII[4]
The circuit court also ruled that article VIII of the Act, entitled "Qualification for Property Bail," was unconstitutional as being "too vague, unreasonable, and overbroad" because, the court said, the article "does not provide the sheriff, who is charged with the responsibility of approving property bonds under this Article, with workable criteria to approve a property bond." The trial court's order further stated that article VIII "denies equal protection to defendants who have someone who is willing to pledge property as surety for bail because the article sets up vague and confusing criteria for a sheriff to use in approving property bonds."
Article VIII sets forth the procedures by which real property owned by an Alabama resident and located in Alabama may be pledged for a defendant's bail. Under article VIII, the real property to be pledged must be worth, exclusive of encumbrances and homestead exemptions, the value of the bond. However, several property owners can pledge several properties, provided their cumulative value equals the amount of the bond. The value of the pledged property is not determined by its assessed value, but is calculated by using a "lien and affidavit" form that is signed by the property owner; that document creates a valid lien on the property if a final judgment of forfeiture is entered. Court personnel approving property bonds determine the value of the property by using available independent information, or they may rely solely on information provided in the "lien and affidavit" form filled out by the owner, without verification. If there is a forfeiture of bond, the "lien and affidavit" form may be filed, along with a copy of the final judgment, in the probate court of the county where the property is located. If the forfeiture is satisfied or set aside, any form so filed is to be canceled. Finally, if a forfeiture is not discharged, the sheriff of the county where the pledged property is located may execute on the property.
Although at the hearing on Blake's petition there was testimony that certain court personnel who must apply the requirements of article VIII find it confusing, that testimony was given less than a week after the Act became effective. The fact that the article provides the judicial officer with discretion to choose the method used to determine the value of the property pledged and requires the completion of an additional form does not render the procedure unconstitutionally vague and confusing. Under the standard for unconstitutional vagueness pronounced in Friday, supra, and discussed above, we conclude that a person of average intelligence, using common sense, can derive a rule or standard for the procedures to be followed in accepting a pledge of real property for bail. With some modification, article VIII of the Act appears to be based on the procedures established in Rule 7.1(e), A.R.Crim.P. *Page 965 
Nor do we find article VIII unconstitutionally overbroad. It does not "sweep unnecessarily broadly and thereby invade the area of protected freedoms." See Friday, 539 So.2d at 215.
The circuit court also ruled that because of the complexity of article VIII's requirements for the pledge of real property for bond, that article violated the equal protection rights of a defendant who had someone willing to make such a pledge. As noted above, we do not find the procedural steps established in article VIII to be unconstitutionally vague or confusing. Neither do the article VIII procedures deny the equal protection rights of defendants such as those described by the circuit court (see paragraph one of this part IV) by making it unreasonably more difficult to pledge real property as bond than to use a professional surety. At the hearing on Blake's petition there was testimony that certain court personnel believed that under article VIII they had to perform time-consuming title searches on pledged property in order to determine the unencumbered value of the property or believed that under article VIII they must require the person pledging the property to provide documentation on mortgage balances and that obtaining that documentation could take much time.
However, we conclude that article VIII creates no such burden. Section 54, part of article VIII, clearly allows the judicial officer the discretion to determine the value of the property pledged, based solely on an unverified affidavit signed by the owner of the property. Further, although the article states that providing false information on the affidavit can be a Class A misdemeanor, such action is not made criminal unless the false information is provided willfully or intentionally. We conclude that the procedure established by article VIII does not unreasonably burden a defendant's right to a property bond and does not violate a defendant's equal protection rights on that basis.
 V. Article VII[5]
Finally, the circuit court ruled that article VII of the Act, entitled "Qualification of Bail — Judicial Public Bail," was unconstitutional, concluding that the article violated the equal protection and due process rights of poor defendants and was also overbroad and vague. The focus of the circuit court's ruling was the requirement for a hearing by a judicial officer before a defendant eligible for release on judicial public bail,[6] otherwise known as "release on one's own recognizance," can be so released. Section 45, part of article VII, requires that the district attorney or other prosecuting attorney be given a minimum of 72 hours' notice of the judicial public bail hearing, so that the district attorney or other prosecuting attorney may prepare to make a presentation before the judicial officer on the issue of whether an eligible defendant should be released on the defendant's own recognizance and, if so, whether any conditions should be placed on that release.
Under Alabama law as it exists now that the circuit court has declared Article VII unconstitutional, and as it existed before the Act was passed, a person arrested pursuant to a warrant must be taken before a judge or magistrate "without undue delay, except in no event later than seventy-two (72) hoursafter arrest," for a determination of conditions of release. Rule 4.3(b)(2)(i) and (ii), A.R.Crim.P. (Emphasis added.) If the arrest *Page 966 
is made without a warrant, Rule 4.3(a), A.R.Crim.P., requires that the arrested person be released unless a probable cause hearing is held within 48 hours, and if at such a hearing probable cause is found then the court is required to hold a hearing to determine if the defendant can be released on the defendant's own recognizance. Thus, article VII's requirement that the prosecuting attorney be given at least 72 hours' notice of the judicial public bail hearing represented a significant change in Alabama law.
Regarding this 72-hour minimum notice requirement, the circuit court wrote:
 "The pretrial detention of this defendant accused of a misdemeanor for possibly five or six days because of defendant's lack of resources interferes with the right of liberty, the premise of innocent until proven guilty, and shocks the conscience of this court. If this defendant has $60 cash to pay a bondsman, he walks out of the jail as soon as he is printed and photographed. If this defendant has $300 in cash and is arrested at night or on a weekend he must stay in jail until court opens or pay the bondsman's fee. If the defendant has someone with property willing to make his bail, he will be held until the sheriff can determine that the property is sufficient to secure the bail, a new and cumbersome process that does not appear to improve anything or to protect the public. Absent property or money, the defendant must wait 72 hours for a hearing for judicial public bail. Putting liberty on a cash basis was never intended by the founding fathers as the basis for release pending trial."
(Emphasis added.)
Section 45, part of article VII, creates the situation that unless the prosecuting attorney waives the minimum 72-hour notice, an indigent defendant whose only avenue of release is judicial public bail must remain in custody waiting for the hearing for a minimum of 72 hours after the prosecutor is notified, and possibly much longer. On the other hand, an identically situated nonindigent defendant with the money to make a cash bail or to pay a surety for a bail bond, can obtain immediate release from custody.
Further, if an indigent is arrested on a Friday evening, notice of a judicial public bail hearing could not be provided to the prosecutor until Monday morning — the 72 hours' notice would begin at that time. The 72-hour notice is a minimumrequirement; article VII of the Act sets no outer limit on howlong a defendant may be forced to remain in custody awaitinghis judicial public bail hearing. The circuit court correctly stated that under article VII of the Act an indigent defendant could remain in custody for five or six days awaiting release on judicial public bail. Thus, we are faced with the question of whether article VII violates indigent defendants' constitutional rights by unreasonably restraining their liberty based on their lack of wealth.
 A. Due Process
The Fourteenth Amendment to the United States Constitution forbids any state from depriving "any person of life liberty, or property, without due process of law." Similarly, the Alabama Constitution of 1901, Art. I, § 6, states that in a criminal prosecution the accused shall not be "deprived of life, liberty, or property, except by due process of law." Further, both Art. I, § 16, of the Alabama Constitution and Ala. Code 1975, § 15-13-2, provide that defendants not charged with capital offenses are entitled to bail, by sufficient sureties, as a matter of right. Thus, we begin with the concept that "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." UnitedStates v. Salerno, 481 U.S. 739, 755, 107 S.Ct. 2095, 2105,95 L.Ed.2d 697 (1987).
However, a person's right to liberty may be outweighed by the interest of the Government or the State in community safety, and "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling." Salerno,481 U.S. at 749, 107 S.Ct. at 2103. In Salerno, the United States Supreme Court was faced with a challenge to the constitutionality of the federal Bail Reform Act of 1984,18 U.S.C. § 3141 et seq., which allowed the Government to detain defendants charged with certain serious offenses until trial, without bail. Under the Bail Reform Act, when a defendant charged *Page 967 
with a federal crime first appears before a judicial officer, a hearing is held to determine whether the accused may be released on the accused's personal recognizance or an appearance bond or will be detained pending trial. 18 U.S.C. § 3142. Under the federal Act, the hearing will not be delayed unless the defendant or the attorney for the Government seeks a continuance, which may not exceed three days if the continuance is sought by the Government. 18 U.S.C. § 3142(f). In Salerno, the Supreme Court concluded that the detention of arrestees charged with serious offenses that is authorized by the federal Bail Reform Act was constitutional because of the overwhelming interest of the Government in community safety and because of the procedural safeguards placed in the Act. 481 U.S. at 755,107 S.Ct. at 2105-06.
However, in Salerno, the United States Supreme Court passed on the constitutionality of the federal Act without specifically commenting on the time limits placed on when the defendant's detention hearing can be held. That subject was recently addressed by the Court in United States v.Montalvo-Murillo, 495 U.S. 711, 716, 110 S.Ct. 2072, 2077,109 L.Ed.2d 720 (1990), where it wrote:
 "Though we did not refer in Salerno to the time limits for hearings as a feature which sustained the constitutionality of the Act, we recognize that a vital liberty interest is at stake. A prompt hearing is necessary, and the time limitations of the Act must be followed with care and precision."
(Emphasis added.)
We believe the federal Act's detention hearing is a procedure equivalent to the Alabama Act's judicial public bail hearing — both hearings are used to determine whether a defendant can be released on judicial public bail. Unlike the procedures set out in Rule 4, A.R.Crim.P., Alabama's Act requires a minimum 72-hour notice to the prosecuting attorney before a defendant's judicial public bail hearing can be held; this requirement means that the hearing will not be held within three days, the period set by the federal Act and acknowledged by the United States Supreme Court as a constitutional requirement.Montalvo-Murillo, 495 U.S. at 716, 110 S.Ct. at 2076-77. Thus, based on the United States Supreme Court's ruling inMontalvo-Murillo, we hold that the 72-hour minimum notice requirement of article VII of Alabama's Act is unconstitutional in that it deprives an accused of the right to liberty without the due process of law guaranteed by the United States and Alabama Constitutions.[7]
 B. Equal Protection
The circuit court also ruled that article VII of the Act violates the equal protection rights of indigent defendants, concluding that it unreasonably distinguishes between indigent defendants and non-indigent defendants. The Fourteenth Amendment of the United States Constitution forbids a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." We have stated:
 "In equal protection jurisprudence, any law that does not employ a classification based on race, sex, national origin, or legitimacy of birth and does not impinge upon a fundamental right, is subject to the 'rational relationship' analysis. Under this analysis, any law rationally related to a legitimate governmental objective will withstand an equal protection challenge."
Ex parte Robertson, 621 So.2d 1289, 1291 (Ala. 1993). See alsoCarroll v. State, 599 So.2d 1243, 1244 (Ala.Crim.App. 1992) ("[s]eparate treatment of defendants does not violate any constitutional guarantee of equal protection so long as that treatment is reasonable and founded on a rational basis," *Page 968 
quoting Wheatt v. State, 410 So.2d 479, 484
(Ala.Crim.App. 1982)).
Thus, the 72-hour minimum notice requirement of article VII will be found to violate the equal protection rights of an indigent defendant only if the State has no rational basis for treating otherwise equally situated indigents and nonindigents differently. We have already acknowledged that the State has an important interest in the safety of the community and in preventing crime by persons who have been arrested. SeeSalerno, 481 U.S. at 478, 479, 107 S.Ct. at 1870, 1870. However, we conclude that the procedures under the Act by which a defendant may obtain release by cash bail, a bail bond, property bail, or judicial public bail are not a reflection of the State's interest in public safety. The circuit court aptly noted in its order declaring article VII unconstitutional:
 "The 72-hour delay has no reasonable basis for the protection of the public in any case where a non-violent defendant is held, merely because he has no money or anyone to pledge property for his release. The U.S. Supreme Court in United States v. Salerno, stated [that the] government's interest must be sufficiently weighty to subordinate the individual's right to liberty to society's needs. United States v. Salerno, 481 U.S. at 750, 751
[107 S.Ct. at 2103, 2103-04]. The State has failed in this case to show a 'sufficiently weighty' interest in detaining, for more than 72 hours, a non-violent defendant in a misdemeanor case, merely because he has no money or anyone to pledge property for his release."
Under the scheme established by the Act, a defendant with financial means who is charged with a noncapital violent felony, and who may potentially pose a great threat to community safety, can obtain immediate release simply by posting bail. However, an indigent defendant charged with a relatively minor misdemeanor who cannot obtain release by cash bail, a bail bond, or property bail, must remain incarcerated for a minimum of three days, and perhaps longer, before being able to obtain judicial public bail. We conclude that, as written, article VII of the Act violates an indigent defendant's equal protection rights guaranteed by the United States Constitution, because the classification system it imposes is not rationally related to a "legitimate governmental objective."
 C. Overbreadth
As noted previously, this Court has held that "[s]tatutes and regulations are void for overbreadth if their object is achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Friday, 539 So.2d at 215. Article VII, at section 46 of the Act (quoted in note 6) forbids, among other things, a defendant's obtaining release by judicial public bail if the defendant (1) has ever been convicted of a felony or (2) is "on probation or parole for a previous conviction on a misdemeanor." Under article VII, a defendant convicted of a relatively minor felony 20 or even 30 years ago and who is arrested today for a relatively minor misdemeanor could not obtain judicial public bail even if the judicial officer wished to grant it. Similarly, article VII prevents a judicial officer from releasing on judicial public bail a defendant arrested for a misdemeanor violation if the defendant is presently on probation or parole for a prior misdemeanor. Those limitations on who may receive judicial public bail sweep broadly, encompassing categories of defendants not reasonably related to the State's interest in community safety.
Under Alabama law a defendant has an absolute right to bail in all noncapital cases. Ala. Const. (1901), Art. I, § 16; Ala. Code 1975, § 15-13-2; Shabazz v. State, 440 So.2d 1200
(Ala.Crim.App. 1983). A system of bail based totally on some form of monetary bail, and not providing for release on a defendant's own recognizance in appropriate circumstances, would be unconstitutional. See Lee v. Lawson, 375 So.2d 1019
(Miss. 1979). Under the Act, those persons prohibited by article VII from obtaining judicial public bail can obtain release only through monetary bail. Thus, we conclude that the total prohibitions on judicial public bail noted in this subpart C. sweep so broadly as to include persons who should otherwise be eligible for judicial public bail, because the prohibitions are not sufficiently related to maintaining *Page 969 
community safety.[8] Accordingly, we conclude that article VII of the Act is also unconstitutionally overbroad.
 VI. Conclusion
We hold that the rationale utilized by the circuit court is not sufficient to hold articles V, VI, and VIII of the Act unconstitutional, and as to those articles the judgment of the circuit court is reversed and a judgment is rendered for the State. However, the circuit court correctly held article VII of the Act unconstitutional; as to that article the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND JUDGMENT RENDERED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
[1] Act 93-677 is now codified at Ala. Code 1975, § 15-13-100 et seq.
[2] Article V of Act 93-677 is now codified at Ala. Code 1975, §§15-13-124 to -129.
[3] Article VI of Act 93-677 is now codified at Ala. Code 1975, §§15-13-130 to -141.
[4] Article VIII of Act 93-677 is now codified at Ala. Code 1975, §§ 15-13-152 to -157.
[5] Article VII of Act 93-677 is now codified at Ala. Code 1975, §§15-13-142 to -151.
[6] Under article VII of the Act, not all defendants are eligible for pretrial release through judicial public bail. Section 46, part of article VII (now codified at Ala. Code 1975, §15-13-145) states:
 "Any person charged with a felony, misdemeanor, or violation shall be eligible for a judicial public bail, if:
 "(1) The person is not charged with robbery, capital murder, forcible sex crimes, escape, trafficking in drugs or the sale of drugs.
 "(2) The person has not been convicted of a previous felony or committed a felony while being released on any form of bail.
 "(3) The person is not presently under a suspended sentence or on probation or parole for a previous conviction on a misdemeanor or a felony.
 "(4) There is no evidence, satisfactory to the judicial officer, that the person has violated a previous bail release, whether it be judicial public bail, property, cash, or professional surety bail."
(Emphasis added.)
[7] In Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54
(1975), the United States Supreme Court ruled that a person arrested without a warrant had a constitutional right under the Fourth Amendment to a "timely judicial determination of probable cause as a prerequisite to detention."420 U.S. at 125, 95 S.Ct. at 869. Recently, in County of Riverside v.McLaughlin, 500 U.S. 44, 56, 111 S.Ct. 1661, 1670,114 L.Ed.2d 49 (1991), the Supreme Court held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." We note that the constitutional requirements for a timely determination of probable cause following a warrantless arrest and a timely judicial determination regarding release on judicial public bail are not necessarily equivalent requirements.
[8] We note that the discretion provided for in Rule 4, A.R.Crim.P., which authorizes the judicial officer to require monetary bail as a condition of release in appropriate cases rather than allowing release on the defendant's own recognizance, is not the equivalent of a system of bail that recognizes only monetary bail. Further, the judicial discretion provided for in Rule 4 is closely tailored to the State's interest in maintaining community safety, whereas the broad categories of defendants prohibited from judicial public bail by article VII are not.