113 So.2d 686

**RAY E. LOPER LUMBER CO.**

v.

**STATE of Alabama.**

7 Div. 365.

Supreme Court of Alabama.

July 2, 1959.

Greenebaum, Barnett & Wood, Louisville, Ky., and Handy Ellis, Columbiana, for appellant.

John Patterson, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellee.

COLEMAN, Justice.

Appellant is an Alabama corporation engaged in the business of severing timber from the soil and manufacturing the same into lumber, all in this State.

For the period from October 1, 1951, to June 30, 1954, appellant paid to the State a tax known as Forest Products Severance Tax, levied by Act No. 169, 1945 General Acts, page 285, as amended by Act No. 695, 1953 Acts, page 948.

Pertinent parts of said act recite as follows:

"Section 2. To provide further for conservation of the natural resources of the State by protection of the forest products and development of the forestry program, there is hereby levied, and shall be collected as herein provided, a privilege tax on account of the business activities upon every person engaging or continuing to engage in the state in the business of severing timber or any other forest products from the soil, for sale, profit or commercial use whether as owner, lessee, concessionaire or contractor. The privilege tax hereby imposed is in addition to other taxes now levied and shall be known as The Forest Products Severance Tax. Said tax, together with interest and penalties imposed by this Act, shall be a lien upon the forest products so severed, and upon the product or products manufactured therefrom, until the tax hereby imposed with respect to such forest product shall have been paid, or until such forest product or the product manufactured therefrom, shall have been sold by the manufacturer thereof; but the lien of such tax shall not be enforceable against the bonafide purchaser from the manufacturer of any such forest products, or of the products manufactured therefrom.

"Section 3. The measure of the tax is at the following rates: 1. On pine lumber twenty (20¢) cents per thousand feet board measure. Where the timber is sold as logs and is not converted into lumber in Alabama, the rate shall be twenty (20¢) cents per thousand feet log scale (Doyle Rule) except that logs under eight inches in diameter inside bark at small end shall be scaled as containing one foot log scale for each foot of length. 2. On hardwood, cypress and all other species lumber eight (8¢) cents per thousand feet board measure. Where the timber is sold as logs and is not converted into lumber in Alabama, the rate shall be twenty (20¢) cents per thousand feet log scale (Doyle Rule) except that logs under eight inches in diameter inside bark at small end shall be scaled as containing one foot log scale for each foot of length. * * *" 1945, General Acts.

The act here in question may be found in Alabama Code of 1940, Pocket Parts, Title 8, §§ 231(2)–231(29). This case is not concerned with the 1955 Amendment.

During the period here involved, appellant kept records of timber severed according to "log scale (Doyle Rule)," but did not keep records according to lumber tally. The stipulation of fact recites that: "Lumber tally is the actual measurement of cubic feet of lumber sawed from a log." It further appears to be agreed by both parties as a fact that when logs are measured according to log scale and the number of board feet of lumber which will be produced from those logs is estimated, and the logs are later sawed into lumber and the actual number of board feet of lumber produced is measured according to lumber tally, the number of board feet actually produced is substantially greater than the number of board feet estimated according to log scale.

Appellant paid the tax according to measurement by log scale. The State in-

sisted, however, that appellant was bound to pay the tax based on lumber tally.

Since no record was available of the actual number of board feet of lumber produced, the number of board feet of lumber was calculated by increasing the log scale estimate, in one instance by eighteen per cent and in another instance by thirty per cent. We understand that the accuracy of this increase or overrun is not disputed and that appellant concedes that the calculation is correct if the tax is to be levied according to lumber tally.

When the statute is construed as contended for by the State, the severer of pine timber who ships logs out of the State in an unmanufactured condition, pays a tax based on the log scale estimate, while the severer who also converts the logs into lumber in Alabama pays on the number of board feet produced according to lumber tally, and thereby a greater tax is imposed on the severer who manufactures in this State than is imposed on the severer who ships the logs out of the State in an unmanufactured condition.

Under its contention, the State assessed appellant for a deficiency in severance tax and appellant appealed to the Circuit Court of Shelby County, in Equity, as provided by statute. That court affirmed and made final the assessment against appellant in the amount of $1,074.85. As we understand the record, the amount of this judgment, less penalties, represents the increase resulting from the overrun or greater number of board feet actually produced over the estimated number of board feet calculated by measuring the logs according to log scale (Doyle Rule) before the logs are sawed into lumber.

Appellant states the question in the case as follows:

"* * * the only issue now before the Court is the constitutionality of the Severance Tax Act as interpreted and applied by the Department of Revenue. * * *"

Actually the argument of appellant divides the question into two parts, to wit:

1. Appellant contends that the act is not correctly interpreted and that the legislature intended that tax shall be measured according to log scale on those who convert the logs into lumber in Alabama as well as on those who ship the logs out of the State in an unmanufactured condition.

2. That if the State's interpretation of the statute be correct, then the statute violates the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

### Construction of Statute

To support its insistence that the correct measure of the tax is the log scale estimate and not the actual lumber measurement, appellant relies on Stone v. General Box Co., 212 Miss. 60, 53 So.2d 85. In that case the court construed a statute of Mississippi levying a severance tax on timber severed in that state. The opinion states that:

"* * * The tax here involved as provided by said act is 'For saw timber logs, cross-ties or veneer stock fifteen (15¢) cents per thousand feet, board measure.' * * *

* * * * * *

"Section 1(a) of the aforesaid act specifically provides 'The tax imposed by this act shall be measured by the quantity of timber, or timber products severed * * *'. As above pointed out, the tax is 15¢ per thousand feet, board measure, for saw timber logs, cross-ties, and veneer stock, severed from the soil, and is not upon the products which may be manufactured therefrom. The tax here is on logs and not on the amount of lumber which may be produced therefrom. * * *

"* * * ' "Logs" refers to the section or sections of a tree which have been cut or sawed from the trunks after the same has been severed from the stump; while by "lumber" is meant the manufactured product from the logs.' It is perfectly clear that there is a vast difference between logs and lumber, and that as above stated the tax here involved is levied upon logs and not upon lumber or some other commodity which may be produced therefrom.

"Appellant contends, however, that by the use of the term 'board measure' in the statute the legislature manifested an intention that this should mean the measurement of the boards that may be produced from the logs. We do not so understand the meaning of the term. Board measure is a measurement in board feet. A board foot is 144 cubic inches of wood, regardless of whether it be in a tree or a log or lumber, and regardless of its shape. When applied to logs it has reference to the measurement of the log and is employed for the purpose of estimating the number of board feet of lumber which *may subsequently* be obtained from the log, but when applied to lumber it means the actual number of board feet which *have been* obtained from the sawing of the log. Craddock Mfg. Co. v. Faison [138 Va. 665, 123 S.E. 535, 39 A.L.R. 1309], supra. * *

"Section 5135, Code of 1942, relieves us of having to determine which system or rule should be employed in this state. It provides: 'The table known as "Scribner's Lumber and Log-Book by Doyle's Rule," is the standard rule of measurement by which saw-logs and square timber shall be measured. The use of any other rule of measurement is unlawful; * * *'." 53 So.2d 85, 86, 87.

The Mississippi Court held that the tax must be measured under their statute, according to log scale and not according to lumber tally. We think there is a substantial difference in the requirements of the Mississippi statute and the requirements of the Alabama statute. There the

statute provided: "For saw timber *logs* * * * (15¢) cents per thousand feet, board measure." The Alabama statute provides: "On pine *lumber* twenty (20¢) cents per thousand feet board measure." The Mississippi statute imposes a tax measured on "saw timber logs;" the Alabama statute imposes a tax measured on "lumber." The intent of the two statutes is differently expressed. This difference further appears in the Alabama statute where it is provided that the measure of the tax "* * * Where the timber is sold as logs and is not converted into lumber in Alabama, the rate shall be twenty (20¢) cents per thousand feet log scale (Doyle Rule) * * *." A clear distinction is made by the statute in the measurement of the tax when imposed on logs and when imposed on lumber. We hold that the trial court correctly interpreted the statute.

### Equal Protection

Appellant states in brief:

"The State Department of Revenue of Alabama has collected on manufacturers of lumber in Alabama the Severance Tax measured on the basis of board feet lumber tally. However, where logs were shipped out of the State of Alabama, without being manufactured into lumber in the State of Alabama, the Department of Revenue calculated the tax on the basis of the Doyle Rule. * * *

* * * * * *

"The imposition of the tax with the 18 to 30% additional over-run as assessed by the Department of Revenue is unconstitutional for it results in a discrimination against the manufacturers of lumber in Alabama and in favor of manufacturers of lumber out of the State of Alabama. Local manufacturers pay tax on from 18 to 30% more lumber than the out-of-state manufacturer. The result of the interpretation sought to be placed on the Act by the Legislature (sic: Revenue Department) would be (to) impose a tax

not levied by the Legislature, that is, a tax on the conversion of logs into lumber, whereas the tax is imposed solely upon the privilege of severing logs from the soil. * * *

* * * * * *

"* * * There can be no doubt but that a manufacturer in Alabama is at a disadvantage, particularly so in the border sections when he seeks to buy standing timber or cutting rights in competion (sic: competition) with a manufacturer who processes the logs into lumber out of the state, for the Alabama manufacturer must consider in the cost he can pay for the timber the fact that his out-of-state competitor will be taxed on 18 to 30% less lumber. * * *" (Par. Supplied.)

Appellant relies on Raymond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78, where the holding was that a state board of equalization denied taxpayer the equal protection of the laws. The United States Superme Court there said:

"The case before us is one which the facts make exceptional. It is made entirely clear that the board of equalization did not equalize the assessments in the cases of these corporations, the effect of which was that they were levied upon a different principle or followed a different method from that adopted in the case of other like corporations whose property the board had assessed for the same year. * * * There is here no contention of illegality simply because of assessing the franchises of these corporations at a different rate from tangible property in the state, which the state might do, Coulter v. Louisville & N. R. Co., 196 U.S. 599, 25 S.Ct. 342, 49 L.Ed. 615, but it is asserted that the board assessed the franchises and other property of these companies at a different rate and by a different method from that which had been employed by the board for other corporations of the

same class for that year. The result is an enormous disparity and discrimination between the various assessments upon the corporations. * * *"
207 U.S. 20, 36, 37, 28 S.Ct. 7, 12.

In the Chicago case, supra, application of unequal rates to corporations of the same class was held to be a denial of equal protection. There the unequal rates were applied to members of the same class; here, as we hereinafter undertake to show, the unequal rates are applied to two different classes and all members of the same class are taxed alike.

Furthermore, the tax in the Chicago case, supra, was in the nature of an ad valorem tax, while the instant tax is in the nature of an excise or privilege tax. The Supreme Court of the United States, in upholding a progressively increasing chain store excise tax, said:

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. (Citations Omitted.) The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, (Citation Omitted.), or if any state of facts reasonably can be conceived to sustain it. (Citations Omitted.)

*   *   *   *   *   *

"It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the Court make this abundantly clear." State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 537, 538, 51 S.Ct. 540, 543, 75 L.Ed. 1248.

The Chicago case, supra, does not apply here.

Appellant says in brief:

"Here a lumber manufacturing company who had paid a license tax for the privilege of manufacturing in Alabama, is being discriminated against in favor of a person who manufacturers (sic: manufactures) lumber out of the State of Alabama. We have two manufacturing companies, one located in the State, and one out, being taxed by a different method solely because of the location of the manufacturing plant, and not on any reasonable basis. * * *

*   *   *   *   *   *

"There being no basis other than residence for the imposition of a different method of measuring the tax or classifying the manufacturer and such arbitrary classification being in clear violation of the 14th Amendment to the United States Constitution the addition of an 18% to 30% over-run is therefore void." (Par. Supplied.)

Appellant's insistence appears to be that because a sawmill privilege license tax is required under Title 51, § 585, Code 1940, the State cannot classify severers of timber and impose an additional tax on those who manufacture in Alabama at a rate measured by the amount of lumber produced from timber severed in Alabama.

■ Double taxation does not contravene the Fourteenth Amendment. The

late Mr. Justice Holmes, for the Supreme Court of the United States, has written:

> "The objection to the taxation as double may be laid on one side. That is a matter of State law alone. The Fourteenth Amendment no more forbids double taxation than it does doubling the amount of a tax; short of confiscation or proceedings unconstitutional on other grounds. * * *" Ft. Smith Lumber Co. v. State of Arkansas, 251 U.S. 532, 533, 40 S.Ct. 304, 305, 64 L.Ed. 396.

In Ward Baking Co. v. City of Fernandina, D.C., 29 F.2d 789, also relied on by appellant, the court held invalid an ordinance which imposed a tax of $5 on resident bakeries and a tax of $150 on non-resident bakeries delivering at retail within the city. The court said:

> "The ordinance plainly discriminates between nonresidents and residents engaged in the same occupation. The classification upon which the difference in tax is based is not according to occupation, but according to residence. * * *" 29 F.2d 789, 790.

The classification in the statute before us is not based on residence, but is based on the difference between those who manufacture within the State and those who do not manufacture within the State. There is here a difference in occupations. Those who manufacture in this State are required to pay the greater tax.

The statute now before us first divides those who sever timber from the soil into two classes, i. e., first, those who engage "* * * in the business of severing timber * * * from the soil, for sale, profit or commercial use * * *," and, second, "* * * individual owners of timber who occasionally sever * * * from their own premises to be utilizes(d) by them in the construction or repair of their own structures, buildings * * *," etc. §§ 1, 4, Act No. 169, supra.

The second class, those owners who sever for their own use, are exempt from severance tax. The exemption of such owners is like the exemption accorded to farmers who refine their own sugar by a Louisiana statute which was upheld in American Sugar Refining Co. v. State of Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102. The exemption of such timber owners clearly appears to be based on a valid reason. Indeed, appellant makes no insistence to the contrary.

Those who sever for sale, profit, or commercial use are further divided into two classes with respect to measurement of the tax. To this classification appellant objects. One class are those who ship logs out of the State "not converted into lumber in Alabama." All members of such class or subclass are taxed at the same rate. The statute makes no distinction between any similarly circumstanced in that class. The other class or sub-class are those who convert the logs into lumber in Alabama. All members of that class similarly circumstanced are taxed at the same rate.

The statute does levy on one who severs pine timber and also converts it into lumber in Alabama a tax greater than the tax levied on one who merely severs timber and ships it out of the State unconverted into lumber. The question raised by appellant requires us to determine whether or not this difference in rate between these two classes constitutes a denial of equal protection of the laws.

The Supreme Court of the United States has stated the rules by which a statute is to be measured against the Fourteenth Amendment as follows:

> "Taxes, which are but the means of distributing the burden of the cost of government, are commonly levied on property or its use, but they may likewise be laid on the exercise of personal rights and privileges. As has been pointed out by the opinion in the Charles C. Steward Mach. Co. case [Chas. C. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.

Ed. 1279], such levies, including taxes on the exercise of the right to employ or to be employed, were known in England and the Colonies before the adoption of the Constitution, and must be taken to be embraced within the wide range of choice of subjects of taxation, which was an attribute of the sovereign power of the states at the time of the adoption of the Constitution, and which was reserved to them by that instrument. As the present levy has all the indicia of a tax, and is of a type traditional in the history of Anglo-American legislation, it is within state taxing power, and it is immaterial whether it is called an excise or by another name. See Barwise v. Sheppard, 299 U.S. 33, 36, 57 S.Ct. 70, 71, 81 L.Ed. 23. Its validity under the Federal Constitution is to be determined in the light of constitutional principles applicable to state taxation.

" * * * It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. (Citations Omitted.) This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. (Citations Omitted.)

"Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. (Citations Omitted.)

"This restriction upon the judicial function, in passing on the constitu-

tionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 109 A.L.R. 1327, 1332, 1333.

That court has also said:

" * * * It is needless to repeat what was said in the Jackson case to the effect that the difference between the subjects taxed need not be great, and that, if any reasonable distinction can be found the duty of the court is to sustain the classification embodied in the law." Louis K. Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 484, 77 L.Ed. 929, 85 A.L.R. 699, 706.

In a recent decision, February 24, 1959, the Supreme Court of the United States reiterated the foregoing principles and upheld an Ohio statute which taxed residents and exempted non-residents from ad valorem tax on merchandise " ' * * * if held in a storage warehouse for storage only' * * *." In holding that the statute did not deny equal protection, the court said:

" * * * Here the discrimination against residents is not invidious nor palpably arbitrary because, as shown, it' rests not upon the 'different residence of the owner,' but upon a state

of facts that reasonably can be conceived to constitute a distinction, or difference in state policy, which the State is not prohibited from separately classifying for purposes of taxation by the Equal Protection Clause of the Fourteenth Amendment." Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480, 487.

A severer of timber who merely severs it from the soil and ships it out of the State unconverted into lumber, enjoys merely the privilege of severing. One who severs from the soil and then converts the timber into lumber in Alabama enjoys not only the privilege of severing but also the privilege of manufacturing in this State.

The difference in the two classes is based on the difference in the privilege or privileges enjoyed. He who manufactures in Alabama enjoys an additional or greater privilege. We do not think a classification, which requires a greater tax from the one who enjoys the greater privilege, is arbitrary or fanciful. Such a classification is based on a real and substantial difference. We do not undertake to set out other substantial reasons which justify the classification.

Classification and fixing the measure of the tax is a legislative and not a judicial function. The function of the court " * * * is only to determine whether it is possible to say that the legislative decision is without rational basis. * * *" Clark v. Paul Gray, Inc., 306 U.S. 583, 594, 59 S.Ct. 744, 751, 83 L.Ed. 1001.

We conclude that the classification employed in the statute does have a rational basis and that the statute does not deny to appellant the equal protection of the laws. The trial court correctly so held and the decree appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN, and MERRILL, JJ., concur.