This case was remanded by the Supreme Court of the United States to enable this Court to determine whether the partial invalidity of the pass-through provisions of Act 79-434 entitled the plaintiff oil and gas producers to a refund of taxes paid by them under protest. *Page 1032 
For a review of the litigation which culminated in that order, see Eagerton, Commissioner v. Exchange Oil and GasCorporation, 404 So.2d 1 (Ala. 1981); Exxon Corporation v.Eagerton, Commissioner, ___ U.S. ___, 103 S.Ct. 2296,76 L.Ed.2d 497 (1983).
In its opinion of June 8, 1983, the Supreme Court of the United States decided that the pass-through provision of Act 79-434 was pre-empted by federal authority "over wholesale sales of gas in interstate commerce, for it barred gas producers from increasing their prices to pass on a particular expense — the increase in the severance tax — to their purchasers." The pass-through prohibition was upheld, however, insofar as it applied to sales of gas in intrastate commerce.
The Commissioner of Revenue now concedes the invalidity of the entire pass-through provision, for, as stated in his brief:
 "[T]he only question which remains with regard to the interpretation and implementation of the severability clause is whether Act 79-434 is still capable of fulfilling the apparent legislative intent, after the Pass-Through Prohibition is deleted."
And further stated in brief:
 "In view of the foregoing arguments and cited authorities, it is the position of the Commissioner of Revenue of the State of Alabama that the separability clause contained in Act 79-434 Acts of Alabama is to be given effect and the remainder of Act 79-434 is sufficient to accomplish the legislative purpose as stated in the Act and thus the remainder of the Act should be sustained with the Pass-Through Prohibition omitted."
The narrow issue before this Court, therefore, is whether the remaining provisions of Act 79-434 are enforceable, absent the statutory proscription against passing on the applicable severance tax by the producer.
On remandment, this Court has been favored with excellent briefs by the parties.
As stated in its title, Act No. 79-434 was an act:
 "To amend Code of Alabama 1975, Sections 40-20-2
and 40-20-8, so as to increase the rate of tax; to provide further for distribution of the proceeds of the tax; and to provide certain exemptions from the increased rate."
This statement was followed by Section 1, whose language expressly amended Code of Ala. 1975, § 40-20-2, which also had imposed a severance tax. The statute as amended by Act 79-434 read:
 "§ 40-20-2. (a) There is hereby levied, to be collected hereafter, as herein provided, annual privilege taxes upon every person engaging or continuing to engage within the State of Alabama in the business of producing or severing oil or gas as defined herein, from the soil or the waters, or from beneath the soil or the waters, of the state for sale, transport, storage, profit or for use. The amount of such tax shall be measured at the rate of six per centum of the gross value of said oil or gas at the point of production. All wells producing less than 26 barrels of oil per day shall be taxed at the rate of four per centum (4%) of the gross value of said oil or gas at the point of production. All wells that come into production after the effective date of this Act shall be taxed at the rate of four per centum (4%) of the gross value of said oil or gas at the point of production for a period of ten years after production begins. Ten years after production begins, such tax shall then be imposed at the rate of six per centum (6%) on such wells that go into production after the effective date of this Act. Provided, however, that said additional increase shall be limited to those oil and gas wells from between 15,000 and 15,800 feet in the smackover formation. (b) The tax is hereby levied upon the basis of the entire production in this state, including what is known as the royalty interest, on which production the amount of such tax shall be a lien, regardless of the place of sale or to whom sold, or by whom used, or the fact that the delivery may be made to points outside the state; and the tax shall accrue at the time such oil or gas is severed from the soil or the waters, or *Page 1033 
from beneath the soil or the waters, and in its natural, unrefined, or unmanufactured condition. (c) A county, city, town or municipality of the state of Alabama shall not establish, levy, impose or collect as a condition of doing business or otherwise, any tax, fee, license or charge, whatsoever, directly or indirectly, on or with respect to the production, treating, processing, ownership, sale, storage, purchase, marketing, or transportation on any oil or gas produced in the state of Alabama and on which severance taxes have been paid to the state of Alabama, or upon the business of producing, treating, processing, owning, selling, buying, storing, marketing or transporting such oil, or gas or upon the ownership, operation or maintenance of plants, facilities, machinery, pipe lines, gathering lines or any equipment, whatsoever, which are, or may be necessary or convenient to the production, treating, processing, ownership, storage, sale, purchase, marketing, or transportation of such oil or gas; provided, that nothing herein shall be construed to prohibit, limit or restrict a county, city, town or municipality from imposing and collecting ad valorem taxes on any property, real or personal not otherwise now exempted by law; further, the limitation herein imposed upon counties, cities, towns and municipalities shall not apply to any county, city, town or municipality which does not receive a share of the severance tax under the provisions of this article. (d) Nothing contained herein shall be deemed to limit or to enlarge the authority of a county, city, town or municipality to levy taxes or licenses on oil refining facilities located therein or on the suppliers of services or goods not including oil or gas to those persons engaging in the business of producing, treating, processing, owning, selling, buying, storing, marketing or transporting such oil or gas. Any person who is a royalty owner shall be exempt from the payment of any increase in taxes herein levied and shall not be liable therefor. (e) The privilege tax herein levied shall be absorbed and paid by those persons engaged in the business of producing or severing oil or gas only, and the producer shall not pass on the costs of such tax payments, either directly or indirectly, to the consumer; it being the express intent of this act that the tax herein levied shall be borne exclusively by the producer or severer of oil or gas."
Section 2 of Act 79-434 amended § 40-20-8, dealing with the allocation and distribution of taxes collected, and made other but like provisions.
The severability clause is found in Section 3:
 "The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, such declaration shall not affect the part which remains."
The purpose of subsection (e), according to the appellees, denotes the express intent of the legislature to include the pass-through prohibition, without which, the entire act fails. This follows, the appellees maintain, because that provision was a material inducement to the remainder of the act, as evidently expressed by the legislature. The purpose of the act, they contend, was to increase the severance tax and to provide certain exemptions from that increase, the increase being linked with the exemptions, with the prohibition being one of the exemptions.
We agree with the appellees, as we must, that the pass-through prohibition was intended by the legislature to be a constituent portion of Act 79-434. However, we cannot agree that its absence requires the remainder of the act to fail.
Severability clauses have found favor in our decisions.Hamilton v. Autauga County, 289 Ala. 419, 268 So.2d 30 (1972), elaborated upon the effect of such clauses, citing Allen v.Walker County, 281 Ala. 156, 199 So.2d 854 (1967). This Court stated:
 "`We recognize that a separability clause shall be given effect, where possible, to save legislative enactment . . ., that is if the invalid portion is not so intertwined with the remaining portions *Page 1034 
that such remaining portions are rendered meaningless by the extirpation, in which event it must be assumed that the legislature would not have passed the enactment thus rendered meaningless. . . .'" 289 Ala. at 426, 268 So.2d 30.
That opinion continued:
"We further recognize that,
 "`. . . [W]here a statute is thus partly infected with invalidity . . . the severable or saving clause thereof . . . is persuasive to the judicial mind the legislature intended that should the invalid portion be stricken, the valid part should survive. [Citations omitted.]" 289 Ala. at 426, 268 So.2d 30.
Applying this principle to this statute, it is unquestionable that the legislature intended that Act 79-434 increase the severance tax on oil and gas; intended to provide for distribution of the tax receipts; and intended to provide for certain exemptions from the increased rate. Elimination of the pass-through prohibition does not inhibit the effectuation of the remaining portions, however. They are not so intertwined as to render their application meaningless; indeed, it appears that they can be administered without the assistance of the pass-through provision. Only the incidence of the tax is affected by that provision. Its absence does not affect the remaining clear purpose: raising and distributing revenue. Moreover, the presence of the severability clause clearly indicates that the legislature also intended that the exemptions be severable, and thus provided for the survival of the remaining portions should the exemptions later be stricken from the act. It follows that, absent the pass-through prohibition found in Section 1 (e) of Act 79-434, which is excised under the severability clause, the remaining portions of Act 79-434 are to be given effect. Accordingly, the plaintiff oil and gas producers are not entitled to a refund of taxes paid by them under protest.
On remand, the judgment of this Court of July 10, 1981, as modified by this opinion, is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.