539 So.2d 208 (1988)
Rachel FRIDAY and Mike Neely
v.
ETHANOL CORPORATION and Southeastern Energy Corporation.
87-306.
Supreme Court of Alabama.
December 30, 1988.
Rehearing Denied April 21, 1989.
Philip H. Butler of Robison & Belser, Montgomery, for appellants.
*209 Lloyd W. Gathings of Gathings & Davis, Birmingham, for appellees The Ethanol Corp. and Southeastern Energy Corp.
Wesley Romine of Morrow, Romine & Pearson, Montgomery, for appellees/intervenors Alabama Oil Supply, et al.
Robert A. Huffaker and Holley C. Knowles of Rushton, Stakely, Johnston & Garrett, Montgomery, for amici curiae Alabama Farm Bureau Federation, John Dorrill, Sam J. Darwin, and F.B. Ellison.
HOUSTON, Justice.
The Alabama Legislature, in its 1987 Regular Session, enacted Act No. 87-277. This Act became law under Article V, § 125, Alabama Constitution of 1901, without approval by the Governor. This Act amended Ala.Code 1975, § 8-17-82, which had previously provided:
"(a) Each person selling, offering for sale, storing or using in the state any petroleum product must label, or cause to be labeled, each tank car, tank, barrel, pump or other container in which such petroleum product is contained or marketed with the words `guaranteed legal standards' and with an additional word or words denoting the precise character of the petroleum product in the container so labeled. Each word in such label shall be legibly printed in letters not less than one-half inch in height.
"(b) An alternate manner for container and other labeling information as required under this section may be prescribed by the board of agriculture and industries pursuant to rules and regulations which shall be consistent with the evident intent and purposes of this section."
That Code section was amended by adding the following as subsection (c):
"(c) In addition to the requirements of subsections (a) and (b) of this section each person selling, offering for sale, storing or using in the state any petroleum product to be used as a motor fuel containing a minimum of 10% blend of ethyl alcohol of a purity of at least 99% denatured in conformity with one of the approved methods set forth by the U.S. Department of Treasury Division of Alcohol, Tobacco and Firearms and derived from agricultural or forest products or other renewable resource products commonly known as gasohol must label or cause to be labeled each container, pump, or dispenser from which such petroleum product is sold or dispensed with the word `GASOHOL.' Each such container or pump shall be conspicuously, clearly and distinctly labeled on each side which faces the motor vehicle and readily visible in an upright position with the word vehicle and readily visible in an upright position with the word [these last eleven words were repeated in the Act] `GASOHOL' printed in black letters at least three inches in height and one-quarter inch in width on a yellow background. The board of agriculture and industries shall have authority to make and issue rules and regulations relating to the implementation of the provisions of this subsection; provided, however, no alternate method of labeling shall be prescribed by such board for this subsection nor shall the requirements of this subsection be in any manner delayed."
The Ethanol Corporation and Southeastern Energy Corporation, who market, distribute, and retail ethanol in the State of Alabama, filed this declaratory judgment action in the Circuit Court of Montgomery County, seeking a temporary restraining order, preliminary injunction, and permanent injunction against the enforcement of subsection (c) of Act No. 87-277, contending that subsection (c) violated the due process and equal protection guarantees of the Alabama and United States Constitutions.
The Attorney General of the State of Alabama and the Commissioner of the State of Alabama Department of Agriculture and Industry were defendants in the circuit court. The trial court permitted Rachel Friday and Mike Neely, Alabama citizens who use motor fuels in Alabama, to intervene as defendants.
A temporary restraining order was entered by the trial court, and all parties agreed to treat the hearing for the preliminary *210 injunction as a final hearing on the merits for a permanent injunction. The testimony was heard ore tenus by the trial court over a period of three days. Thereafter, the trial court entered the following order:
"This matter having come before the Court, ore tenus, for trial on the merits, and the Court having taken oral testimony from witnesses for all of the parties, and having reviewed all exhibits and considered the legal authorities and arguments submitted by the parties, and further understanding and concluding that the legal standard to be applied in this matter is `beyond a reasonable doubt', State ex rel. Wilkinson v. Murphy, 186 So. 487 & 237 Ala. 332 (1939), finds that it has been proven by the plaintiffs beyond a reasonable doubt that there are no discernible differences between gasoline petroleum [sic] and gasohol.
"Further, it has been proven that the public is not in any greater danger by using gasohol than it is by using gasoline. Consequently, the Court fails to find any greater legitimate governmental interest in alerting the public to the presence or availability of `gasohol' as opposed to the presence or availability of `gasoline'.
"It is, therefore, the Court's opinion that Act No. 87-277 is unconstitutional on its face; it is discriminatory on the basis that it singles out gasohol as a more noticeable petroleum than it does gasoline. The Court can find no rational governmental interest or reason why labeling of the products should be different. There is no basis for the distinction.
"Additionally, the Act, supra, is vague and ambiguous and would be virtually impossible to enforce. The Act states that the pumps `shall be conspicuously, clearly and distinctly labeled on each side which faces the motor vehicle and readily visible in an upright position with the word vehicle and readily visible in an upright position with the word Gasohol printed in black letters at least three inches in height and one-quarter inch in width on a yellow background.' Persons of common intelligence would have to guess as to what this language means.
"A statute which ... requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application is unconstitutional, Zwickler v. Koota, 389 U.S. 241 [88 S.Ct. 391, 19 L.Ed.2d 444] (1967).
"Based on the foregoing, it is hereby ORDERED, ADJUDGED and DECREED that Act No. 87-277 is declared unconstitutional, null and void."
The Attorney General and the intervenors, Friday and Neely, appealed to this Court. Subsequently, the Attorney General's appeal (87-305), was dismissed, pursuant to his motion for voluntary dismissal.
The first issue presented to us is whether the ore tenus standard of review applies.
This Court in Keeton v. Bank of Red Bay, 466 So.2d 937, 940 (Ala.1985), wrote:
"[I]t is fundamental law in Alabama that when the trial judge sits as the trier of fact, and hears ore tenus evidence, his resolution of the factual issues, based upon that evidence, is presumed correct and will be affirmed by this Court if, under any reasonable aspect, it is supported by any credible evidence."
If the ore tenus standard of review applies, we must presume that the following factual findings are correct:
(1) "[T]here are no discernible differences between gasoline ... and gasohol."
(2) "[T]he public is not in any greater danger by using gasohol than it is by using gasoline."
We have studied the excellent briefs submitted by the parties and the amici curiae and have reviewed the testimony and exhibits. The factual findings are supported by credible evidence. They are not plainly erroneous, for there is no error that is obvious to this Court's mind or senses or distinctly recognizable by this Court. The factual findings, while perceived by the appellants in their adversarial position as unjust, are not readily or instantly perceived by this Court as being so, so they are not manifestly unjust.
*211 Likewise, the trial court used the "beyond a reasonable doubt" standard, which this Court has held is the proper standard to use when the constitutionality of an act is challenged; see Eagerton v. Exchange Oil & Gas Corp., 404 So.2d 1, 7 (Ala.1981), aff'd in part, rev'd in part, 462 U.S. 176, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983), on remand, 440 So.2d 1031 (Ala.1983).
If the ore tenus standard is the correct standard of review, then we must test the constitutionality of Act No. 87-277, with the trial court's findings of fact as established facts and in doing so must find that the Legislature exercised its police power arbitrarily or capriciously and therefore the Act must be held to be unconstitutional. Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 13, 18 So.2d 810 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); Reed v. Brunson, 527 So.2d 102, 116 (Ala.1988).
By using the ore tenus standard when the constitutionality of legislation is challenged, this Court would permit the findings of a single circuit judge, elected by the electors within a single circuit, to invalidate legislation enacted by the Legislature elected by the electorate throughout the State of Alabama and invested with the legislative power of the state by Article IV, § 44, Alabama Constitution of 1901, which legislation was permitted to become law by the Governor, who was elected by the electorate of the State of Alabama.
Article III, § 42, Alabama Constitution of 1901, provides as follows:
"The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."
Article III, § 43, Alabama Constitution of 1901, provides:
"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
To assure that we, the Judiciary, do not exercise power reserved by the Constitution to the Legislature, and thereby violate the fundamental law separating the powers of government into three distinct departments, we have held that when testing the constitutionality of a statute the only question for the court to decide is one of legislative power, not of legislative expediency or legislative wisdom. All questions of propriety, wisdom, necessity, utility, and expediency are exclusively for the Legislature to determine and are matters with which the courts have no concern. Reed v. Brunson, 527 So.2d 102 (Ala.1988); Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 815 (1944); Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 352-53 (Ala.1980) (Shores, J., concurring in the result).
In Ray E. Loper Lumber Co. v. State, 269 Ala. 425, 432, 113 So.2d 686, 692-93 (1959), this Court quoted with approval the following from Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937):
"`This restriction upon the judicial function, in passing on the constitutionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalog of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible *212 to preserve to the legislative branch its rightful independence and its ability to function.'"
The United States Supreme Court in Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911), which involved a state statute constitutionally challenged as being arbitrary, wrote:
"The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. Bachtel v. Wilson, 204 U.S. 36, 41 [27 S.Ct. 243, 245, 51 L.Ed. 357]; Louisville and Nashville R.R. Co. v. Melton, 218 U.S. 36 [30 S.Ct. 676, 54 L.Ed. 921]; Ozan Lumber Co. v. Union County Bank, 207 U.S. 251, 256 [28 S.Ct. 89, 91, 52 L.Ed. 195]; Munn v. Illinois, 94 U.S. 113, 132 [24 L.Ed. 77]; Henderson Bridge Co. v. Henderson City, 173 U.S. 592, 615 [19 S.Ct. 553, 562, 43 L.Ed. 823]." (Emphasis supplied.)
Chief Justice Warren, writing for a majority of the United States Supreme Court in McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1104-05, 6 L.Ed.2d 393 (1961), said:
"Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholely irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." (Citations omitted.) (Emphasis added.)
This Court also has held that a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. See Ray E. Loper Lumber Co. v. State, supra; City of Birmingham v. Stegall Co., 439 So.2d 91 (Ala.1983); Eagerton v. Exchange Oil & Gas Corp., supra; Haden v. Watson, 270 Ala. 277, 117 So.2d 694 (1960).
In this case the trial court misperceived its duty as a factfinder. It was not to find from controverted facts what it perceived to be the truth. The trial court's duty in this case was to determine if there was any state of facts that could reasonably be conceived that would sustain the legislative distinction between gasoline and "gasohol," as that term is defined in subsection (c) of Act No. 87-277. Therefore, the ore tenus standard of review is not applicable in this case, and we will not presume that the factual findings made by the trial court are correct. We can readily see that there is a state of facts that could reasonably be conceived that would sustain the statute. Evidence of the following facts was introduced to indicate differences between gasohol and gasoline: A motorist can expect fewer miles per gallon and, therefore, less fuel economy in using gasohol as compared to gasoline, because the same unit volume of gasohol produces less energy than gasoline; due to the differences in the air/fuel ratio of gasohol versus gasoline, gasoline engines may require different carburetor adjustments for the *213 use of gasohol than would be appropriate for gasoline; due to the solvent effect of the alcohol found in gasohol, gasohol can be expected to remove gum, varnish, and some tank linings from the fuel system, which can result in the clogging up of the fuel system in a gasoline engine; gasohol has a greater tendency to leach through rubber fuel parts in fuel systems, especially in automobile engines manufactured prior to the late 1970's and in marine engines prior to the early 1980's; such leaching can and has caused deterioration of such rubberized fuel parts and lines by removing the plasticizers or elastomers from these parts and contributes to leaking and failure of these parts; some fiberglass gasoline fuel tanks which are in use are not designed to accommodate the solvent effect of gasohol, and some are designed to accommodate the use of gasohol; many gasoline engine manufacturers make distinctions between the use of gasohol and gasoline in their owner's manuals; General Motors warranties exclude coverage for exterior paint damage on an automobile in which gasohol is used as a fuel; gasohol is more volatile and evaporates quicker than gasoline; ethanol added to gasoline does not enhance the octane for use by two-cycle engines; there is a higher probability of vapor lock with use of gasohol than with gasoline; and there is a possibility in gasohol for the alcohol to mix with water in a fuel tank and result in a phase separation, causing the alcohol to separate from the gasolinethis can result in a failure of a gasoline engine to operate. Therefore, there is a state of facts that reasonably may be conceived to justify the statutory discrimination against gasohol as defined in the Act.
The trial court held that the Act was unconstitutionally vague and cited Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). The appellant in the Zwickler case did not assert that the statute was void for vagueness; he contended that although the statute lacked neither clarity nor precision, it was void for "overbreadth" and offended the constitutional provision that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." 389 U.S. at 249-50, 88 S.Ct. at 396.
A commercial regulatory statute, such as the one at issue in this case, may be declared unconstitutionally vague and ambiguous only if a person of ordinary intelligence, exercising common sense, can derive no rule or standard at all from the statute's language. Cotton States Mutual Insurance Co. v. Anderson, 749 F.2d 663 (11th Cir.1984); Exxon Corp. v. Busbee, 644 F.2d 1030 (5th Cir.1981), cert. denied, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981).
In Exxon Corp. v. Busbee, supra, in addressing the void for vagueness issue of legislation regulating the marketing of gasoline between gasoline distributors and dealers, the Fifth Circuit Court of Appeals, at 1033, wrote:
"Because the statute is not concerned with either the first amendment or the definition of criminal conduct ... we must be lenient in evaluating its constitutionality. For [the statute] to constitute a deprivation of due process, it must be `so vague and indefinite as really to be no rule or standard at all.'... To paraphrase, uncertainty in this statute is not enough for it to be unconstitutionally vague; rather, it must be substantially incomprehensible.

"Having applied this test to the statute before us, we find that the district court did not err in ruling it definite enough. Surely, as is tacitly admitted by the parties before us, it can be ascertained that the statute applies to gasoline distributors such as Exxon. Moreover, while their constructions differ, the parties themselves have offered possible interpretations of [the statute].... These attempts at statutory construction illustrate that [the statute] is ... at least amenable to some sensible construction. Thus, it does alert the parties to the character of the prescribed conduct ... and does amount to something more than *214 `no rule ... at all.'" (Citations omitted.) (Emphasis supplied.)
The Act at issue provided that each person selling, offering for sale, storing or using in this state any petroleum product to be used as a motor fuel containing at least "10% blend of ethyl alcohol of a purity of at least 99% denatured," must label or cause to be labeled each container, pump, or dispenser from which such petroleum product is sold or dispensed with the word "GASOHOL." It then provided "[e]ach such container or pump shall be conspicuously, clearly and distinctly labeled on each side which faces the motor vehicle and readily visible in an upright position with the word `GASOHOL' printed in black letters at least three inches in height and one-quarter inch in width on a yellow background." (Emphasis added.)
Clearly, there is a requirement that each container and pump be labeled with the word "GASOHOL." The sentence that is in controversy is the one describing the label; in that sentence, eleven words preceding "GASOHOL" are repeated. This could be interpreted as requiring the words "vehicle" and "gasohol" to be printed in black letters at least three inches in height and one-quarter inch in width on a yellow background. However, since the word "vehicle" is not in quotes or capitalized and the word "GASOHOL" is in quotes and capitalized in both the sentence requiring the labeling and in the sentence describing the label, it is evident that a typographical error was made by repeating eleven words. The Michie Company apparently so interpreted it, for it omitted the eleven words that were repeated immediately before the word "GASOHOL," when this section of Act No. 87-277 was incorporated into the Alabama Code as § 8-17-82.
There is no presumption of correctness of the trial court's interpretation of the statute as void for vagueness. It is clear to this Court that persons of ordinary intelligence, exercising common sense, can derive a rule or standard from the statute's language; therefore, since this is a commercial regulatory statute, not involving either the First Amendment or the definition of criminal conduct, it is not unconstitutionally vague.
The appellants, Friday and Neely, contend that we are not dealing with a legislative act that precludes the marketing of a product or with a legislative act that in any way expresses an opinion as to the quality of a product. There is undisputed evidence that when the State of Louisiana changed its labeling requirement from a one-inch label, which notified the consumer that ethanol was in the motor fuel, to a label similar to the one called for in subsection (c) of the Alabama Act, the ethanol blended fuel sales in Louisiana dropped at least 66%.[1] The president of Ethanol Corporation testified that he would expect the same result in Alabama with the label required by subsection (c) of Act No. 87-277. There is further evidence that in the 41 states now requiring labels for ethanol blends, only Alabama requires a label with the word "GASOHOL" in three inch letters on a yellow background.
The evidence shows that while subsection (c) of Act No. 87-277 defines "gasohol" as an ethanol blend, the distinction between ethanol blends and methanol blends is not generally known to the public and both types of blends are commonly referred to and thought of as gasohol.[2] There is also evidence that the literature of some major automobile manufacturers refers to methanol blends as gasohol.[3] The evidence *215 shows that although many major automobile manufacturers appear to extend warranty coverage to motor vehicles using certain ethanol and methanol blended fuels,[4] others appear to extend their warranties to vehicles using ethanol blends but not to those using methanol blended fuels.[5] Methanol blended fuels cause problems in motor vehicles that are not caused by ethanol blended fuels.
The case of Zwickler v. Koota, supra, cited in the order of the trial court, involved the doctrine of overbreadth.
Is subsection (c) of Act No. 87-277 overbroad so as to be unconstitutional and thus void? The doctrine of overbreadth recognizes that a state legislature may have a legitimate and substantial interest in regulating particular behavior, but "that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). Historically, the overbreadth doctrine has been used by the federal courts to prevent a chilling effect on First Amendment freedoms. Note, The First Amendment Overbreadth Doctrine, 83 Harv.L. Rev. 844, 852 (1970). The overbreadth doctrine does not apply to commercial speech under the Federal Constitution. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). However, the overbreadth doctrine under the Alabama Constitution has been applied in due process cases not involving first amendment freedoms. See Ross Neely Express, Inc. v. Alabama Department of Environmental Management, 437 So.2d 82 (Ala.1983).
Justice Adams, for the full Court in Ross Neely Express, wrote:
"The right to due process is guaranteed to the citizens of Alabama under the Alabama Constitution of 1901, Article 1, Sections 6 and 13. This constitutional right to due process applies in civil actions as well as criminal proceedings. Pike v. Southern Bell Telephone and Telegraph Co., 263 Ala. 59, 81 So.2d 254 (1955). The courts have found that this right is violated when a statute or regulation is unduly vague, unreasonable, or overbroad....
"In reviewing a regulation of a county Board of Health, this court held that the central issue was reasonableness. Baldwin County Board of Health v. Baldwin County Electric Membership Corporation, 355 So.2d 708 (Ala.1978). In City of Russellville v. Vulcan Materials Co., 382 So.2d 525 (Ala.1980), this court said:
"`The validity of a police power regulation... primarily depends on whether, under all the existing circumstances, the regulation is reasonable, and whether it is really designed to accomplish a purpose properly falling within the scope of the police power. Crabtree v. City of Birmingham, 292 Ala. 684, 299 So.2d 282 (1974).... Otherwise expressed, the police power may not be employed to prevent evils of a remote or highly problematical character. Nor may its exercise be justified when the restraint imposed upon the exercise of a private right is disproportionate to the amount of evil that will be corrected. Bolin v. State, 266 Ala. 256, 96 So.2d 582, conformed to in 39 Ala.App. 161, 96 So.2d 592 (1957).'
"Statutes and regulations are void for overbreadth if their object is achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Keyishian v. Board of Regents, *216 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)."
437 So.2d at 84-85.
This Court in Ross Neely Express found that the regulation involved in that case was so broad that it invaded the area of protected freedom, severely restricted the use of property, and created a situation where discriminatory enforcement was almost inevitable.
This Court has also recognized that the right to due process under the Alabama Constitution is violated when a statute, regulation, or ordinance imposes restrictions that are unnecessary and unreasonable upon the pursuit of useful activities in that they do not bear some substantial relation to the public health, safety, or morals, or to the general welfare, the public convenience, or the general prosperity. Ross Neely Express, Inc. v. Alabama Department of Environmental Management, 437 So.2d at 84-86; City of Russellville v. Vulcan Materials Co., 382 So.2d 525, 527-28 (Ala.1980); Leary v. Adams, 226 Ala. 472, 474, 147 So. 391 (1933). Baldwin County Board of Health v. Baldwin County Electric Membership Corp., 355 So.2d 708 (Ala. 1978).
The Legislature has the power to require the labeling of petroleum products, but it does not have the power to require labeling that would confuse and mislead the consuming public and substantially diminish the plaintiffs' business by doing so. Since subsection (c) of Act No. 87-277 would do both, it is unconstitutional for being overly broad and unreasonable.
Although there is no severability clause in the Act, subsections (a) and (b) of Act No. 87-277, which purport to amend Ala. Code 1975, § 8-17-82, have an independent field of operation, as evidenced by their prior adoption and operative effect. Therefore, we do not hold that those prior subsections of § 8-17-82 are unconstitutional and void.
We can uphold the judgment of the trial court without concurring in the rationale given by the trial court for its judgment. "There is rather obvious fundamental difference in upholding the trial court's judgment and reversing it; this Court will not reverse the trial court's judgment on a ground raised for the first time on appeal... even though it affirms judgments on bases not asserted in the trial court.... This difference is predicated on the `longstanding, well-established rule that [in order to secure a reversal] the appellant has an affirmative duty of showing error upon the record.' Smith v. Equifax Services, Inc., 537 So.2d 463, 465 (Ala.1988); Maryland Casualty Co. v. Tiffin, 537 So.2d 469 (Ala.1988); Tucker v. Nichols, 431 So.2d 1263 (Ala.1983).
The judgment of the trial court holding Act No. 87-277 "unconstitutional, null and void" is affirmed.
AFFIRMED.
SHORES, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs specially.
TORBERT, C.J., and MADDOX and STEAGALL, JJ., dissent.
JONES, Justice (concurring specially).
I concur specially to make one further observation: Although this point was not specifically argued or made the basis for our decision, it is interesting to note that subsection (c), added by the 1987 amendment to § 8-17-82, places a burden of labelling on the "gasohol" industry without placing any like requirements on the suppliers of additives generally. "Gasohol" contains one additive, but there are many others, such as those that compensate for the octane loss in no-lead gasoline.
MADDOX, Justice (dissenting).
One reading the majority opinion would conclude that the majority was going to uphold the constitutionality of the act that requires that persons selling gasohol place a label on the tank to give notice to consumers that the gasoline they are purchasing is enhanced by a minimum of 10% ethyl alcohol. For example, the majority states these correct principles of law in the opinion:
*217 "`The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confined to a separate body of magistracy, to wit: Those which are legislative to one; those which are executive, to another; and those which are judicial, to another.' [Quoting Ala. Const.1901, § 42.]
"* * * *
"To assure that we, the Judiciary, do not exercise power reserved by the Constitution to the Legislature, and thereby violate the fundamental law separating the powers of government into three distinct departments, we have held that when testing the constitutionality of a statute the only question for the court to decide is one of legislative power, not of legislative expediency or legislative wisdom. All questions of propriety, wisdom, necessity, utility, and expediency are exclusively for the Legislature to determine and are matters with which the courts have no concern. Reed v. Brunson, 527 So.2d 102 (Ala.1988); Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 815 (1944); Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 352-53 (Ala.1980) (Shores, J., concurring in the result).
"* * * *
"`"... A state Legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalog of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."'
"* * * *
"`... 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.... [Emphasis added by the majority.]
"* * * *
"This Court also has held that a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. See Ray E. Loper Lumber Co. v. State, [269 Ala. 425, 113 So.2d 686, (1959)], City of Birmingham v. Stegall Co., 439 So.2d 91 (Ala. 1983); Eagerton v. Exchange Oil & Gas Corp., 404 So.2d 1 (Ala.1981); Haden v. Watson, 270 Ala. 277, 117 So.2d 694 (1960)."
The majority also holds that "the trial court misperceived its duty as a factfinder"; that its sole duty was "to determine if there was any state of facts that could reasonably be conceived that would sustain the legislative distinction between gasoline and gasohol"; and that "[w]e can readily see that there is a state of facts that could reasonably be conceived that would sustain the statute." Nevertheless, the majority, after stating all these correct principles of law that guide courts in matters of statutory construction, concludes:
"The Legislature has the power to require the labeling of petroleum products, but it does not have the power to require labeling that would confuse and mislead the consuming public and substantially diminish the plaintiffs' business by doing so. Since subsection (c) of Act No. 87-277 would do both, it is unconstitutional for being overly broad and unreasonable."
The majority, in my opinion, by concluding that the label is confusing and misleading and will "substantially diminish the plaintiffs' business," violates the very separation of powers doctrine contained in this *218 Court's recent case of Reed v. Brunson, 527 So.2d 102 (Ala.1988), and cited in the majority opinion. The majority correctly states the law that "[a]ll questions of propriety, wisdom, necessity, utility, and expediency are exclusively for the Legislature to determine and are matters with which the courts have no concern," but then substitutes its own judgment for what it considers wise, proper, and necessary.
Unquestionably, the product the plaintiffs are dispensing is within the standard dictionary definitions of "gasohol." Although gasoline enhanced with other forms of alcohol is also included within the definitions of "gasohol," the act does not prevent the plaintiffs from advising customers, by whatever means, that the product they sell is enhanced with ethanol.[1] If "gasohol" accurately describes the product that is being dispensed, how can a label that advises customers of this fact be confusing?[2] If the placing of the label "gasohol" on the tanks will cause plaintiffs' business to be "substantially diminished," does that mean that plaintiffs' customers may not now know they are purchasing gasohol? In other words, do customers who are now buying gasohol from the plaintiffs think they are, in fact, getting the same product that is sold by retailers whose gasoline is not enhanced by ethyl alcohol? If so, why could the Legislature not eliminate this confusion? The "wisdom" of this legislation, I believe, is solely a legislative concern. If the effect of the law would be to diminish this particular business, that is a legislative choice, except in rare instances where the regulation is so onerous as to close a business entirely.
I agree with the majority that "there is a state of facts that could reasonably be conceived that would sustain the statute." Because of that fact, I cannot understand why the majority concludes that the statute is unconstitutional. I must respectfully dissent, because I believe the Court has substituted its wisdom as to the propriety of the statute for that of the Legislature. Reed v. Brunson, supra.
TORBERT, C.J., concurs.
STEAGALL, Justice (dissenting).
In my opinion, Act 87-277 is not constitutionally flawed, nor do I believe this Court should substitute its judgment for that of the legislature. Therefore, I dissent from the majority opinion.
NOTES
[1] Later, Louisiana again changed its labeling requirements.
[2] Random House Dictionary (1988); Oxford American Dictionary (1986); Webster's New World Dictionary (1984); and McMillan Dictionary for Students (1981) are among the dictionaries that define the word "gasohol" broadly enough to include ethanol blends and methanol blends. Some other dictionaries define "gasohol" substantially as it is defined in Act No. 87-277, see American Heritage Dictionary (1985).
[3] Owner's manuals for the following automobiles were introduced: the 1987 Nissan Maxima; the 1987 Acura Legend; and the 1985 Honda Prelude.
[4] Owner's manuals for the following automobiles were introduced: the 1987 Nissan Maxima; the 1987 Mercury Sable; the 1987 Renault Alliance; the 1985 BMW 735; the 1985 Peugeot 505; the 1987 Jaguar XJ6 Series III; the 1987 Volkswagen Jetta; the 1985 GMC S15 truck; the 1985 Buick Electra Estate Wagon and LeSabre; the 1987 Audi 5000S; the 1986 Oldsmobile Cutlass Ciera and Cutlass Cruiser; and the 1985 Pontiac Fiero.
[5] Owner's manuals for the following automobiles were introduced: the 1987 Dodge Lancer and Lancer ES; the 1987 Volvo 240; and the 1986 Porsche 944, 944 S, and 944 Turbo.
[1] The act would not prevent the plaintiffs from making truthful claims about their product in advertising or in other information.
[2] I remember when similar labels and signs were required for oleomargarine and ice milk.